# IN THE SUPREME COURT OF TEXAS

════════════

No. 12-0957

════════════

In re Ford Motor Company, Relator

═══════════════════════════════════════════════════════

On Petition for Writ of Mandamus

═══════════════════════════════════════════════════════

**Argued December 3, 2013**

Justice Johnson, joined by Justice Devine and Justice Brown, and by Justice Boyd as to Part III, dissenting.

The Court holds that the wrongful death beneficiaries who intervened in Juan Mendez's personal injury suit against the estate of his deceased brother Cesar are plaintiffs within the meaning of the Texas-resident exception to the forum non conveniens statute because *only* defendants can be third-party plaintiffs, and thus excluded from the definition of plaintiff under the exception. In my view the Court errs in two ways. First, it errs by reading language into the statute, and next it errs by misapprehending the interests of the intervenors.

Clearly the intervenors are not defendants; they were not sued by Juan and they run no risk of a judgment against them for his damages. But, just as clearly, their interests are so closely aligned with those of Cesar's estate that they should be characterized as defendants and third-party plaintiffs, just as the estate is a defendant and third-party plaintiff. As such, the Texas-resident exception should not apply to them in this lawsuit and a proper balancing of the statutory factors requires this suit to be dismissed. Because the Court fails to so hold, I respectfully dissent.

## I. Background

On August 29, 2009, Juan was driving a 2001 Ford Explorer in Mexico when its left rear tire failed, resulting in an accident. Juan and Cesar, who was a passenger in the Explorer, were injured and Cesar eventually died from his injuries. In June 2011, Juan sued Cesar's estate through its administrator Yuri Tueme (the estate), in Hidalgo County, seeking personal injury damages. On July 27, 2011, at 12:24 p.m. Yuri, Cesar's adult daughter, filed a pleading on behalf of the estate denominated as "Defendant's/Third-Party Plaintiff's Original Third-Party Petition." In it she alleged that Ford Motor Company, Goodrich Corporation, Michelin North America, Inc., and Michelin Americas Research and Development Corporation were completely responsible for the accident, the injuries to Juan, and Cesar's death. She also alleged that, contrary to Juan's allegations, Cesar was not responsible to any degree and she claimed survival damages for Cesar's injuries. Then at 12:28 p.m. that same day, Yuri, along with Yadira N. Tueme Tijerina, another of Cesar's adult daughters, and Cesar's mother, Maria De Refugio Mendez Castillo, all in their capacities as individuals and wrongful death beneficiaries of Cesar (Yuri intervenors), filed a pleading entitled "Plaintiffs-Intervenors Yuri Tueme, Yadira N. Tueme Tijerina and Maria De Refugio Mendez Castillo's Original Petition in Intervention." They were represented by the same law firm that filed the third-party petition on behalf of the estate and their pleadings tracked those of the estate as to factual allegations, damage allegations, and theories of liability, except for differences to account for the estate's claiming survival damages while the Yuri intervenors claimed wrongful death

2

damages.[1]  In August, represented by a different attorney from the Yuri intervenors, Melva Uranga filed an "Intervenors/Plaintiffs' Original Petition" in her alleged capacity as Cesar's wife and as mother, next friend, and natural guardian of J.T., Cesar's minor daughter (Uranga intervenors). The Uranga intervenors named Ford Motor Company, Goodrich Corporation, Michelin North America, Inc., and Michelin Americas Research and Development Corporation as defendants,[2] and like the estate and the Yuri intervenors, claimed those defendants were solely responsible for the accident, Juan's injuries, and Cesar's death.  The Uranga intervenors made the same claims as the Yuri intervenors as to facts, wrongful death damages, and theories of liability.[3]

---

[1] For example, in the "Facts" part of their petition, the Yuri intervenors repeated the factual allegations set out in the estate's third-party petition, deleting language in the final paragraph specifying that Yuri, as administrator of the estate, "asserts only those survival claims belonging to the Estate of Cesar Mendez Tueme" and adding language referring to "the intervenors."  The mirror-image language of the pleadings asserted that third-party defendants Ford, *et.al.* were completely responsible for the accident and injuries to both Juan and Cesar.  With the differences in language emphasized, the paragraphs are set out below.  Paragraph A is from the defendant/third-party estate's third-party petition while paragraph B is from the intervenors' original pleading:

> A.  For all of the reasons set forth herein Defendant/Third-Party Plaintiff would show that Third-Party Defendants are completely responsible and legally liable for the injuries suffered by Plaintiff Juan Tueme Mendez and that Third-Party Defendants are completely responsible and legally liable for all claims arising out of the death of Cesar Mendez Tueme *(for which Yuri Tueme asserts only those survival claims belonging to the Estate of Cesar Mendez Tueme)*.  As such, Defendant/Third-Party Plaintiff is not and should not be held responsible and legally liable for Plaintiff Juan Tueme Mendez' injuries, but rather such responsibility and legal liability is upon Third-Party Defendants herein.

> B.  For all of the reasons set forth herein, Defendant/Third-Party Plaintiff *and Intervenors* would show that Third-Party Defendants are completely responsible and legally liable for the injuries suffered by Plaintiff Juan Tueme Mendez, and that Third-Party Defendants are completely responsible and legally liable for all claims arising out of the death of Cesar Mendez Tueme.  As such, Defendant/Third-Party Plaintiff is not and should not be held responsible and legally liable for Plaintiff Juan Tueme Mendez' injuries, but rather such responsibility and legal liability is upon Third-Party Defendants herein.

[2] Ford Motor Company is the only one of the original third-party defendants remaining in the lawsuit.

[3] The pleadings of the Uranga intervenors paralleled those of the Yuri intervenors set out in footnote 1:

> For all of the reasons set forth herein, Intervenors/Plaintiffs would show that Defendant Ford and the Defendants Michelin are completely responsible and legally liable for the injuries suffered by

3

The trial court denied Ford's motion to dismiss based on forum non conveniens, the court of appeals denied mandamus relief, and Ford now asks this Court to issue a writ of mandamus directing the trial court to grant its motion. For the reasons set out below, I would do so.

## II. Discussion

### A. Definition of "Plaintiff"

Texas has codified the doctrine of forum non conveniens. TEX. CIV. PRAC. & REM. CODE § 71.051. The general rule is stated in section 71.051(b):

> If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether [certain enumerated factors apply].

*Id.* § 71.051(b). An exception to the general rule precludes dismissal of claims by plaintiffs who are legal residents of Texas:

> The court may not stay or dismiss a plaintiff's claim under Subsection (b) if the plaintiff is a legal resident of this state. If an action involves both plaintiffs who are legal residents of this state and plaintiffs who are not, the court may not stay or dismiss the action under Subsection (b) if the plaintiffs who are legal residents of this state are properly joined in the action and the action arose out of a single occurrence. The court shall dismiss a claim under Subsection (b) if the court finds by a preponderance of the evidence that a party was joined solely for the purpose of obtaining or maintaining jurisdiction in this state and the party's claim would be more properly heard in a forum outside this state.

*Id.* § 71.051(e). The statute defines "plaintiff" as:

---

Intervenors/Plaintiffs, and that Defendant Ford and Defendants Michelin are completely responsible and legally liable for all claims arising out of the death of Cesar Mendez.

4

a party seeking recovery of damages for personal injury or wrongful death. In a cause of action in which a party seeks recovery of damages for personal injury to or the wrongful death of another person, "plaintiff" includes both that other person and the party seeking such recovery. *The term does not include a counterclaimant, cross-claimant, or third-party plaintiff* or a person who is assigned a cause of action for personal injury, or who accepts an appointment as a personal representative in a wrongful death action, in bad faith for purposes of affecting in any way the application of this section.

*Id.* § 71.051(h)(2) (emphasis added). The statute expressly excludes third-party plaintiffs from the definition of "plaintiff," but does not define "third-party plaintiff." Nor does the statute define or address intervenors.

### B.  The Intervenors are not "Plaintiffs"

The Court says that, in context, section 71.051(h)(2)'s language providing "[plaintiff] 'does not include a counterclaimant, cross-claimant, or third-party plaintiff'" excludes "*only defendants who assert their own claims within the same lawsuit.*" ___ S.W.3d at ___. The Court then says that although the statute excludes only defendants from the definition of plaintiff, parties "need not necessarily be defending a claim to intervene in a defendant's capacity." *Id.* at ___. It proceeds to analyze whether these intervenors, who clearly are not defendants at risk of a judgment being rendered against them, should be "characterized" as defendants even though the Court has already concluded that the statute excludes *only* defendants from the definition of plaintiff. After analyzing the interests of the intervenors, Juan, and Ford, the Court concludes that the intervenors are not defendants and therefore cannot be third-party plaintiffs under the statutory definition. *Id.* at ___.

I agree that the intervenors are not defendants and that the definition of "plaintiff" in section 71.051(h)(2) excludes defendants who assert claims in the same lawsuit. But, I do not agree that the

5

definition of "plaintiff" excludes *only* defendants; the statute simply does not say so.  I further agree that interests of non-defendant intervenors such as these must be analyzed to determine if they should be characterized as defendants, and whether the claims they make should be characterized as counterclaims, cross claims, or third party claims.  But, unlike the Court, I conclude that a proper analysis of the intervenors' interests vis-à-vis Juan, the estate, and Ford yields the conclusion that they should be characterized as third-party plaintiffs.

The Court says that, in context, section 71.051(h)(2)'s language "limits the scope of cross-claimants, counterclaimants, and third-party plaintiffs to defendants that assert claims." *Id.* at ___.  But, it is well established that courts must take statutes as we find them and presume the Legislature included words in statutes that it intended to include and omitted words it intended to omit.  *See, e.g.*, *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010); *Entergy Gulf States Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (noting that we must enforce statutes as written and refrain from rewriting text that lawmakers chose).  If it had been the Legislature's intent to limit the application of section 71.051(h)(2) to actual defendants, it could have inserted the words "a defendant who is," so that the limitation read "[t]he term [plaintiff] does not include *a defendant who is* a counterclaimant, cross-claimant, or third-party plaintiff."  Or, the Legislature could have simply said that "[t]he term [plaintiff] does not include a defendant."  We must presume that the Legislature intentionally omitted any reference to "defendant."  Moreover, courts do not read language into a statute unless doing so is necessary to avoid an absurd result.  *See, e.g.*, *Presidio Indep. Sch. Dist.*, 309 S.W.3d at 930.  The Court does not propose or demonstrate that the language of section 71.051(h)(2) yields an absurd result as it is written.  Nor does it contend that grafting the "only

defendant" language into section 71.051(h)(2) avoids an absurd result. The Court lays out reasons why defendants are excluded from the definition of plaintiff in section 71.051(h)(2), but no one is arguing that the defendant estate is a plaintiff under the statute.

Ironically, the Court's reasons for excluding defendants from being plaintiffs under the statute apply to these intervenors. For example, the Court first says that categorizing a resident defendant who files a third-party claim as a plaintiff could force the defendant to litigate in Texas even if he wants to remove the case to a foreign jurisdiction. But under the Court's construction of the statute, a resident defendant who does not file a third-party claim can nevertheless be unwillingly locked into litigating in Texas by a Texas resident who intervenes, as the intervenors did here. Next, the Court says excluding defendants from the definition of plaintiff keeps one Texas resident defendant who files an affirmative claim from single-handedly preventing other defendants from removing the case from Texas. But again, under the Court's construction of "plaintiff," none of the defendants have to file affirmative claims in order for them to lose the option of removal: Texas-resident intervenors can lock multiple defendants into litigating in Texas despite the defendants' unified desire to remove the case from Texas.

In sum, the Court simply does not convincingly demonstrate that it is an absurd, nonsensical result for "plaintiff" in section 71.051(h)(2) to mean both actual defendants and intervenors who are not defendants but who are aligned with defendants. Nor does it adequately explain how defining "plaintiff" to mean only actual defendants avoids an absurd result. Under the Court's construction of the statute, the Legislature has precluded a Texas resident from section 71.051(e)'s protection when the resident is involuntarily haled into court as a defendant and files a counterclaim or third-

7

party claim. Yet, the Court concludes the Legislature afforded a Texas-resident intervenor section 71.051(e)'s protection—and ability to lock all the other parties into a Texas forum—even though the intervenor aligns with a resident defendant and files the same claim against the original plaintiff or third-party defendant as did the named resident defendant. *That* is a nonsensical result. Rather than construing the statute according to the words the Legislature used, or here, did not use, the Court veers off course and uses "context" to re-make the statutory exception. In the Court's final analysis it seemingly does so because it is unwilling to accept the procedural construct the Legislature's words created. The Court notes that if Juan's claim against the estate is dismissed, the estate will have to litigate in Mexico while the intervenors could file an independent suit in Texas and the Court "decline[s] to treat a fleeting and changeable procedural characteristic as a condition precedent to the Texas-resident exception." ___ S.W.3d at ___. But that position turns the protection of section 71.051(h)(2) on its head under the circumstances before us. The Texas-resident exception serves to keep Texas plaintiffs' claims in Texas, not to insulate claims of non-resident plaintiffs such as Juan from application of section 71.051(b).

Despite its construction of section 71.051(h)(2) as applying only to defendants and the fact that no one contends the intervenors here are actually defendants, the Court proceeds to analyze whether the intervenors should be characterized as defendants. I agree that such an analysis should be made; the intervenors are not actual defendants, and yet under long standing precedent their interests must be analyzed to determine if they should be characterized as such.

Typically, although not always, an intervenor is characterized as either a plaintiff or a defendant. The Court notes that when it is necessary to characterize the nature of an intervenor as

8

a plaintiff or a defendant, the determination generally turns on the claims asserted and relief requested by the intervenor as well as the purposes and consequences underlying the necessity for the designation. ___ S.W.3d at ___; *see Perkins v. Freeman*, 518 S.W.2d 532, 534 (Tex. 1974). This Court has referred to parties who intervened in a lawsuit as third-party plaintiffs, as have others. *See, e.g.*, *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) (per curiam); *Humble Oil & Refining Co. v. Westside Inv. Corp.*, 428 S.W.2d 92 (Tex. 1968). Although the two foregoing cases did not focus on the classification of the intervenors, they demonstrate that intervenors can have a status other than that of either plaintiff or defendant. *See Marshall*, 909 S.W.2d at 898. And while it may be true, as the Court says, that a third-party plaintiff is typically a defendant in the original action who files a pleading to bring a third party into the lawsuit in an effort to pass on or share any liability, ___ S.W.3d at ___, that is not the case when a party who has not been sued as a defendant intervenes in support of and in alignment with a defendant/third-party plaintiff, as has happened here.

The intervenors could have filed a separate suit against Ford, but they chose not to do so. Intervenors such as the Yuri and Uranga intervenors (sometimes referenced collectively as "intervenors") are basically interlopers in a lawsuit. As such, they must take the case as it exists when they join it; they do not get to remake it to fit their interests. *See Buzzini Drilling Co. v. Fuselier*, 562 S.W.2d 878, 879 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ); *Rogers v. Searle*, 533 S.W.2d 440, 443 (Tex. Civ. App.—Corpus Christi 1976, no writ); *Corzelius v. Cosby Prod. & Royalty Co.*, 52 S.W.2d 270, 272 (Tex. Civ. App.—Fort Worth 1932, no writ). And when they showed up, these intervenors joined forces with and asserted the same claims and allocations

9

of fault as the defendant estate: Ford was responsible for the accident, Cesar was not responsible for it, the accident caused Juan's and Cesar's injuries, and the intervenors were entitled to damages because of Cesar's death. This alignment is to be expected because the claims of both the estate and intervenors are derivative of Cesar's claims. *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992); see also Tex. Civ. Prac. & Rem. Code § 71.003(a). As the Court sets out, the intervenors' claims mirror those of the estate. The intervenors have no interest adverse to the estate's claims. Rather, their interests are indistinguishable from those of the defendant/third-party plaintiff estate's, except, as previously noted, the intervenors are not exposed to a potential judgment for Juan's damages, and the types of damages the estate and wrongful death beneficiaries claim differ.

The Court says, at different points, that "the intervenors' interests are not in direct opposition to the plaintiff's," "the intervenors have taken no position on the estate's liability," and "the plaintiff has no beef with intervenors." ___ S.W.3d ___, ___. But those statements do not ring true. The intervenors' interests *are* in direct opposition to Juan's claim against the estate; the intervenors *have* taken a position on the estate's liability; and the plaintiff *does* have beef with the intervenors. First, the intervenors' interests are in direct opposition to those of Juan, the plaintiff who is claiming that Cesar's negligence caused the accident and who is seeking recovery from the estate. After all, how could they not be? If the intervenors aligned with Juan and blamed Cesar and his estate, they would in effect be blaming themselves and seeking to defeat or diminish their own claims. Next, the intervenors' interests were and are exactly aligned with those of the estate as to the estate's liability to the only plaintiff, Juan. Their position is and always must be that Juan is wrong: Cesar did not

10

fail to properly maintain the vehicle and he was not otherwise negligent, because any fault by Cesar directly affects any recovery by intervenors. And the intervenors claim that the accident was all Ford's fault—contrary to Juan's original claim that it was all Cesar's fault and his continuing claim that Cesar was at fault as well as Ford. Finally, as the foregoing shows, Juan may not have a direct "beef" with the intervenors in the sense that he has not sued them, but his interests and theirs directly conflict because he claims that Cesar caused the wreck while their position is that he did not. On the other hand, Ford's interests were and are aligned with the claims made in Juan's petition to the extent that Juan claims Cesar was at fault in causing the accident. Both Juan and Ford are adverse to the estate and the intervenors insofar as Cesar's role in causing the accident is concerned, even though the intervenors are not technically defendants.

The Court notes that in *Perkins* "[w]e treated intervenors as defendants because 'there was no antagonism between the intervenors and defendant' and '[t]he defendant and intervenors were united in a common cause' against the plaintiff." ___ S.W.3d at ___ (quoting *Perkins*, 518 S.W.2d at 534). In this case it is clear that there is no antagonism between the defendant/third-party plaintiff estate and the intervenors. The estate and the Yuri intervenors are represented by the same attorneys. The estate and all the intervenors will want jurors receptive to the position that Cesar was not negligent, and unreceptive to the allegations of both Juan and Ford that Cesar was at fault in causing the wreck. The estate and the intervenors will be aligned as to the types of liability witnesses and evidence needed to show Ford was at fault and Cesar was not. The estate and the intervenors will have different damages issues and models, but their damages claims will not conflict and their jury

11

arguments will be complementary, not antagonistic. Melva Uranga summarized the positions of the intervenors and the estate in an affidavit in support of her intervention:

> I am aware that I have brought claims for [J.T.] against the Ford Motor Company and Michelin tire companies. I know that these claims are being pursued for the benefit of [J.T.]. I know that Yuri Tueme has been appointed as administrator of the Estate of Cesar Tueme, and that the Estate has brought the exact same kind of claims against the Ford Motor Company and Michelin tire companies. I also know that Cesar's mother, and all his adult children, have brought the exact same kind of claims against the Ford Motor Company and Michelin tire companies.

In sum, there simply is no antagonism between the estate and the intervenors whereas there is direct antagonism between Juan, who is claiming Cesar negligently caused the accident, and the estate and intervenors who claim Cesar was not negligent. I recognize that after the estate and intervenors sued Ford, Juan also did. But the alignment of Juan, the estate, and the intervenors against Ford does not remove the antagonism that exists between Juan, on the one hand, and the estate and the intervenors on the other. *See Savage v. Cowen*, 33 S.W.2d 433, 434 (Tex. Comm'n App. 1930, judgm't adopted) ("By seeking recovery against intervenor as well as defendants, intervenor became a defendant as to plaintiffs; his claim is adverse to that of plaintiffs, and, as against them, his position is the same as that of the original defendants."). Thus, the intervenors should be characterized as defendants and third-party plaintiffs and they do not fall under the plain language of the Texas-resident exception in section 71.051(b).

Not only must courts take statutes as they are written and enacted, we must take cases as they are structured by the parties and as they come to us. *See, e.g.*, *Man Engines, Inc. v. Shows*, ___ S.W.3d___, ___ (Tex. 2014) ("We take cases as they come . . ..").  The Court attempts to justify its decision by addressing scenarios that are not before us, such as if the intervenors filed separate suits

12

instead of intervening. But those scenarios show only that different facts and different litigation choices can yield different litigation results. Whether we believe the procedural structure enacted by the Legislature is the most or least efficient way to accomplish a goal is not the proper test for whether we should read words into a statute and risk crossing the dividing line between judicial and legislative prerogatives. The proper test is the longstanding one of whether, absent our reading words into the statute, the statute yields an absurd result. *Presidio Indep. Sch. Dist.*, 309 S.W.3d at 930. And in this instance, if the statute does not reach an absurd result by precluding Texas residents who are defendants and third-party plaintiffs from meeting the statutory definition of plaintiff—and the Court does not say it does—then it is not an absurd result for the intervenors in this case to be precluded from being characterized as plaintiffs. The Court's characterizing the intervenors as plaintiffs instead of as third-party plaintiffs, when they are completely aligned with the defendant estate that is also a third-party plaintiff in the lawsuit, circumvents legislative intent manifested in the words used in section 71. I would characterize the intervenors as third-party plaintiffs, hold that they do not come within the Texas-resident exception to forum non conveniens under the statute, and hold that the only plaintiff in this suit for purposes of Ford's motion to dismiss is Juan—a resident of Mexico. *See* TEX. CIV. PRAC. & REM. CODE § 71.051(h)(2). Those positions would bring us to the question of whether to direct the trial court to grant Ford's motion to dismiss. For the reasons set out below, I would do so.

On a last note, the Court says I would read the statute to exclude original plaintiffs in a suit from the application of section 71.051(e) if they were to file a cross-claim, counterclaim, or third-party claim. The Court is incorrect; I do not even attempt to address such a situation because it

13

would be completely different from the facts before us and would implicate different concerns.

Unquestionably, the Legislature intended to provide that section 71.051(b) does not apply to claims

of Texas-resident plaintiffs. But harmonizing the language of the statute so that such intent is

fulfilled under circumstances not before us will depend on those particular facts and factors.

### III. Application of the Forum Non Conveniens Factors

Typically, the plaintiff's choice of forum is given great deference when the doctrine of forum

non conveniens is being considered. *In re Pirelli Tire L.L.C.*, 247 S.W.3d 670, 675 (Tex. 2007).

But a nonresident's choice of Texas as a forum is generally afforded substantially less deference than

that of a Texas resident. *Id.*; *see also Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28,

31 (Tex. 2010). And if a plaintiff is not a Texas resident, courts must consider the factors[4] listed in

the forum non conveniens statute when determining whether to dismiss or stay an action for forum

non conveniens. TEX. CIV. PRAC. & REM. CODE § 71.051(b). If the factors weigh in favor of the

action more properly being heard in a forum outside Texas, the claim must be dismissed. *In re Gen.*

*Elec. Co.*, 271 S.W.3d 681, 686 (Tex. 2008).

---

[4] The factors to be considered are whether:
(1) an alternate forum exists in which the claim or action may be tried;
(2) the alternate forum provides an adequate remedy;
(3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
(4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;
(5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and
(6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.
TEX. CIV. PRAC. & REM. CODE § 71.051(b).

14

Consideration of the section 71.051(b) factors begins with determining whether there is an adequate alternative forum where the lawsuit may be tried, and then balancing the public and private interests at stake. *Pirelli Tire*, 247 S.W.3d at 675-77. An adequate alternative forum exists if the defendant would be subject to the alternate forum's jurisdiction by consent or otherwise, and the substantive law in the alternate forum would not deprive the parties of a remedy. *Id.* at 677-78. The private interest factors include the location of the evidence, the location of witnesses, the availability of a compulsory process for ensuring the attendance of those witnesses, and the location of the accident scene. *Id.* at 677. The public interest factors include the administrative burden on the courts and citizens of Texas with little or no connection the lawsuit, the extent to which acts or omissions in Texas contributed to the accident or injury, and the alternative forum's interest in protecting the rights of its citizens. *Id.* at 679; *see also* TEX. CIV. PRAC. & REM. CODE § 71.051(b)(5).

The circumstances here, similar to those we addressed in *Pirelli Tire*, weigh in favor of dismissal for forum non conveniens. *Pirelli Tire*, 247 S.W.3d at 677-78. First, Mexico is an adequate alternative forum that is available for the litigation to proceed. Ford has consented to Mexico's jurisdiction and the record demonstrates that Mexican law provides a remedy.

The private factors at stake favor litigating this case in Mexico. The accident site is in Mexico, the vehicle was registered in Mexico, both the plaintiff and decedent were residents of Mexico at the time of the accident, the crash site investigators and treating physicians are all located in Mexico, the accident report and autopsy took place in Mexico, and the majority of the factual

evidence and pertinent fact witnesses are located in Mexico. A Mexican court can compel attendance of these witnesses while a Texas court cannot.

Additionally, while Texas has an interest in seeing that persons injured by negligence or other liability-creating acts allegedly taking place in Texas are compensated for injuries they suffer, the public interest factors weigh at least as strongly in Mexico's favor. The connections Texas is alleged to have with the accident are: (1) several months before the accident a nail was removed from the right front tire (the left rear tire is the one that failed) by a Texas tire shop; (2) general testimony that Cesar performed maintenance on the Explorer's tires in both Texas and Mexico by "checking the pressures, viewing the tires for any obvious problems, and so on"; and (3) Ford tested Explorer vehicles in Texas at some time in the past. Not only does Mexico have similar interests in Cesar's maintenance of the tires, but it also has interest in the driving conduct of motorists on its highways and streets, particularly conduct involved in accidents resulting in fatalities. And Mexico certainly has an interest in protecting the rights of its residents by ensuring they are compensated for injuries they sustain in Mexico.

Just as the balance of factors weighed in favor of Pirelli Tire's motion to dismiss in *Pirelli Tire*, the balance here weighs in favor of granting Ford's motion to dismiss.

## IV. Conclusion

I would grant Ford's request for mandamus relief. Because Respondent does not pray that in the event mandamus relief is granted, the relief be limited to staying the suit, I would direct the trial court to (1) vacate its order denying Ford's motion to dismiss and (2) dismiss the suit.

_____
Phil Johnson
Justice


**OPINION DELIVERED:** July 3, 2014