# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0957
═══════════

IN RE FORD MOTOR COMPANY, RELATOR

═══════════════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════════════

**Argued December 3, 2013**

JUSTICE WILLETT delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, and JUSTICE LEHRMANN joined.

JUSTICE JOHNSON filed a dissenting opinion, in which JUSTICE DEVINE and JUSTICE BROWN joined, and in part III of which JUSTICE BOYD joined.

JUSTICE BOYD filed a dissenting opinion.

This case requires us to interpret the definition of "plaintiff" in the Texas-resident exception to the forum non conveniens statute. A defendant estate was sued in Texas regarding a Mexican decedent's alleged responsibility for a car accident in Mexico. The estate filed a third-party claim against Ford. Wrongful-death beneficiaries—some of whom are legal residents of Texas—intervened and also filed claims against Ford. Ford moved to dismiss under forum non conveniens, and the trial court denied the motion. Ford moved for mandamus relief, which the court of appeals denied, concluding that the decedent's beneficiaries could lay hold of the Texas-resident exception to forum non conveniens. The exception allows plaintiffs who are legal residents of Texas

to anchor a case in a Texas forum even if forum non conveniens would otherwise favor dismissal. We must determine whether the intervening wrongful-death beneficiaries are "plaintiffs" within the meaning of the exception. We agree with the court of appeals that the wrongful-death beneficiaries are distinct plaintiffs that can rely on the Texas-resident exception. Accordingly, we deny mandamus relief.

## I. Background

This case arises from a fatal single-car accident. Juan Tueme Mendez, his brother Cesar Tueme Mendez, and two other passengers were traveling in a Ford Explorer in the Mexican state of Nuevo Leon when the left rear tire burst and the vehicle careened off the road. Juan (the driver) was injured, and Cesar (the passenger) was killed.

Juan, who is not a legal resident of Texas, sued his deceased brother's estate in Hidalgo County, where Cesar's estate was being administered.[1] Juan alleged in his petition that Cesar had failed to properly maintain the vehicle and the tires. Cesar's estate in turn filed a third-party claim against Ford and Michelin,[2] alleging defective design and negligence. The estate's petition sought survival damages for Cesar's pre-death pain and suffering, plus the costs of his funeral and burial.

On the same day, Yuri Tueme, the estate's administrator and Cesar's daughter, and two others filed their own claims against Ford and Michelin as wrongful-death beneficiaries. Soon after, Cesar's minor daughter J.T., with her mother Melva Uranga acting as next friend and guardian, also intervened in the lawsuit as a wrongful-death beneficiary of Cesar, asserting claims against Ford and

---

[1] The district court had granted a letter of administration in January 2011.

[2] Michelin later settled.

Michelin. The intervening claims mirrored the theories of liability in the estate's claims, but the intervenors alleged different damages from the estate. The intervening wrongful-death beneficiaries sought damages allowed for wrongful death, such as emotional pain and suffering, loss of consortium, loss of society, loss of support, and so on. Ford does not seem to dispute that Yuri, J.T., and Uranga are legal residents of Texas.[3] Several months later, Juan amended his petition to add Ford as a defendant in his personal-injury claim. Ford moved to dismiss under forum non conveniens. Following a hearing, the trial court denied the motion without explanation.

Ford filed a petition for writ of mandamus in the Thirteenth Court of Appeals. Ford argued that the trial court had abused its discretion in denying the motion to dismiss and that Ford had no adequate remedy by appeal. Specifically, Ford contended that the intervening beneficiaries are not "plaintiffs" within the meaning of the Texas-resident exception. Thus, the forum non conveniens factors would apply, and our decision in *In re Pirelli Tire, L.L.C.*[4] would favor dismissal.

The court of appeals denied relief.[5] The court agreed that a refusal to dismiss on forum non conveniens grounds could not be adequately remedied by appeal. However, the court held that the wrongful-death beneficiaries are plaintiffs that can take advantage of the Texas-resident exception. Since at least one of the beneficiaries is a legal resident of Texas, the court of appeals concluded that the trial court did not abuse its discretion in denying Ford's motion to dismiss. We agree.

---

[3] We do not decide today whether a next friend can be a "plaintiff" for purposes of the Texas-resident exception. We do not need to address that question to resolve this case because J.T. and Yuri are legal residents of Texas.

[4] 247 S.W.3d 670 (Tex. 2007).

[5] ___ S.W.3d ___.

## II. Discussion

Mandamus relief is only proper when the trial court abused its discretion and the relator lacks an adequate remedy by appeal.[6] We note at the outset that Ford does not have an adequate remedy by appeal. We have held that no adequate remedy by appeal can rectify an erroneous denial of a forum non conveniens motion.[7] Neither party questions the propriety of this holding.

The sole issue before us is whether the trial court abused its discretion by denying Ford's motion. "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ."[8] We conclude, however, that the trial court did not misinterpret the statute at issue.

### A. The Texas-resident exception allows plaintiffs who are legal residents of Texas to keep their cases in the state.

The Legislature has codified the common-law doctrine of forum non conveniens as follows:

> If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action.[9]

The statute then lists six factors that courts must consider in determining whether to stay or dismiss under forum non conveniens.[10]

---

[6] *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004).

[7] *Pirelli Tire*, 247 S.W.3d at 679.

[8] *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

[9] TEX. CIV. PRAC. & REM. CODE § 71.051(b).

[10] *Id.*

4

In order to ensure access to Texas courts for Texas plaintiffs, the Legislature created an

exception to the forum non conveniens rule. The Texas-resident exception reads:

> The court may not stay or dismiss a plaintiff's claim under Subsection (b) if the plaintiff is a legal resident of this state. If an action involves both plaintiffs who are legal residents of this state and plaintiffs who are not, the court may not stay or dismiss the action under Subsection (b) if the plaintiffs who are legal residents of this state are properly joined in the action and the action arose out of a single occurrence.[11]

The formula is simple: plaintiff + legal residence = right to a Texas forum. But the terms

"plaintiff" and "legal resident" require clarification. Both are defined in the statute, but only the

former is directly at issue here. "Plaintiff" is defined as follows:

> "Plaintiff" means a party seeking recovery of damages for personal injury or wrongful death. In a cause of action in which a party seeks recovery of damages for personal injury to or the wrongful death of another person, "plaintiff" includes both that other person and the party seeking such recovery. The term does not include a counterclaimant, cross-claimant, or third-party plaintiff or a person who is assigned a cause of action for personal injury, or who accepts an appointment as a personal representative in a wrongful death action, in bad faith for purposes of affecting in any way the application of this section.[12]

Ford argues that none of the wrongful-death beneficiaries qualifies as a plaintiff under the

statutory definition for two reasons. First, the beneficiaries are third-party plaintiffs expressly

excluded by the definition. Second, the wrongful-death beneficiaries are combined with the decedent

into one single plaintiff, just like a pitcher and a catcher are both members of a single team. In this

scenario, says Ford, the decedent's legal residency controls, and Cesar was not a legal resident of

---

[11] *Id.* § 71.051(e).

[12] *Id.* § 71.051(h)(2).

Texas. We disagree with both arguments and hold that the intervening wrongful-death beneficiaries are distinct plaintiffs within the meaning of the Texas-resident exception.

**B. The intervening wrongful-death beneficiaries are not third-party plaintiffs excluded from the statute's definition of "plaintiff."**

Ford contends the intervening beneficiaries are third-party plaintiffs because:

1.     Their claims mirror the estate's claim; and

2.     Wrongful-death beneficiaries stand in the same legal shoes as the estate.

We disagree. As we read the statute, the definition's exclusion of third-party plaintiffs only excludes defendants who file third-party claims. Thus, intervenors can only constitute third-party plaintiffs under the statute if they can be properly characterized as defendants.[13] We conclude that the intervenors here, however, should not be considered defendants because they are not directly pitted against the plaintiff. Thus, the intervenors are not third-party plaintiffs under the statutory definition. Moreover, while beneficiaries' claims are in a sense derivative of a decedent's claim, this observation does not deprive the intervenors of the status of plaintiffs under the statute.

1. *The intervening beneficiaries are not third-party plaintiffs just because their claims mirror the estate's claims.*

The intervening beneficiaries are not third-party plaintiffs. The statutory definition of "plaintiff" indicates that a plaintiff does not stop being a plaintiff just because he files a cross-claim, counterclaim, or third-party claim. Rather, the statutory definition only excludes *defendants* who

---

[13] While intervenors are not traditional defendants in the sense that they are involuntarily drawn into litigation to defend against a claim, intervenors can still be characterized as defendants under particular circumstances. *See, e.g.*, *Perkins v. Freeman*, 518 S.W.2d 532 (Tex. 1974). We explore this concept in greater depth below.

file counterclaims, cross-claims, or third-party claims. Because intervenors here cannot be properly characterized as defendants, they are not excluded from the statutory definition of plaintiff.

*i. The statutory definition of "plaintiff" excludes only defendants who file third-party claims, cross-claims, or counterclaims.*

The ordinary meaning of the statutory text is the first dip of the oar as courts embark on interpretation of a statute. As part of that inquiry, we must consider words in light of the lexical environment in which we find them. "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning."[14] Under the statutory definition here, the term plaintiff "does not include a counterclaimant, cross-claimant, or third-party plaintiff."[15] Third-party plaintiff is undefined. However, the context of the statute here indicates that this clause excludes *only defendants* who assert their own claims within the same lawsuit.

A third-party plaintiff is a party defending a claim who files a pleading to bring a third party into the lawsuit in an effort to pass on or share any liability.[16] Cesar's estate is a third-party plaintiff in this traditional sense; Juan sued the estate, and the estate in turn sued Ford as a third-party defendant. The wrongful-death beneficiaries of the estate then intervened and asserted claims against Ford.

---

[14] *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

[15] TEX. CIV. PRAC. & REM. CODE § 71.051(h)(2).

[16] *See* TEX. R. CIV. P. 38; BLACK'S LAW DICTIONARY 1708 (10th ed. 2014).

However, as a general matter, both defendants *and* plaintiffs can file counterclaims, cross-claims, and third-party claims. A plaintiff becomes a cross-claimant by asserting a claim against a fellow plaintiff.[17] If the plaintiff defending against the cross-claim then files a claim against the cross-claimant, the plaintiff-defendant would be a counterclaimant. Rule 38 of the Texas Rules of Civil Procedure allows a plaintiff facing a counterclaim to file a claim against a third party.[18] Thus, plaintiffs can file all three of the kinds of claims mentioned in the definition of "plaintiff." But while plaintiffs can wear all of these hats, they do not thereby cease to be plaintiffs as that word is commonly understood.

Statutory definitions must be interpreted in light of the ordinary meaning of the word being defined. A legislature can define terms however it wants.[19] However, when seeking to understand statutory definitions, "the word being defined is the most significant element of the definition's context."[20] Courts should not consider the meaning of the term to be defined in total isolation from its common usage. We presume that a definition of a common word accords with and does not conflict with the ordinary meaning unless the language clearly indicates otherwise.[21]

---

[17] TEX. R. CIV. P. 97(e).

[18] *Id.* at 38(b).

[19] *TGS-NOPEC*, 340 S.W.3d at 439 ("If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage.").

[20] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 232 (2012).

[21] *See id.* ("[W]hile it is true that drafters have the power to innovate upon the general meaning of words at large free from all legal restrictions, they do not have the power to do so free from the presumption that they have not done so." (footnote omitted) (internal quotation marks omitted)).

A definition of "plaintiff" that excludes parties to the original petition who proceed to file a cross-claim, third-party action, or counterclaim is contrary to the ordinary meaning of the word. If two parties file suit against a defendant, we would call them both plaintiffs. If one of the plaintiffs files a cross-claim against the other, common usage would still refer to both parties as plaintiffs. If a defendant filed a counterclaim against a plaintiff, and the plaintiff files a third-party action, we would still call that party a plaintiff. We look for a high level of linguistic clarity from the Legislature that it intends its statutory definition to depart markedly from the ordinary meaning of "plaintiff."

The language of the statutory definition, however, does not clearly signal a departure from ordinary usage because it can be reasonably read as a limitation on the kinds of *claimants* who fit into the definition. The Legislature has elsewhere defined "claimant" as "a party, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff, seeking recovery of damages."[22] The definition of "plaintiff" selects a subset of the broader term "claimant" by excluding the last three party types elsewhere listed as claimants in statutory definitions. It simply clarifies that the Texas-resident exception does not apply to all four categories of claimants. It does not, however, narrow the scope of the first category—plaintiff—or modify its ordinary meaning. The clause simply limits the definition of "plaintiff" to its traditional scope. It does not cause parties who would in common parlance constitute plaintiffs to drop out of the definition.

---

[22] TEX. CIV. PRAC. & REM. CODE § 41.001(1); *see also id.* § 147.001(2).

9

The structure of the definition affirms this reading. The first two sentences of the definition are inclusive and define the scope of "plaintiff." The third sentence carves out particular kinds of claimants from the definition. In full, it states:

> The term [plaintiff] does not include a counterclaimant, cross-claimant, or third-party plaintiff or a person who is assigned a cause of action for personal injury, or who accepts an appointment as a personal representative in a wrongful death action, in bad faith for purposes of affecting in any way the application of this section.[23]

The second half of the sentence, separated by the second "or," refers to parties who would typically be plaintiffs *but for* a bad-faith attempt to game the system. The first half of the sentence refers to the only set of circumstances in which *defendants* assert affirmative claims. The first clause addresses a narrowing of the broad term "claimant." The second clause, on the other hand, narrows the ordinary sense of the word plaintiff by excluding certain bad-faith plaintiffs. Thus, the logical structure of the sentence first addresses defendants who assert claims and then addresses plaintiffs who assert claims but fail to meet the definition for other reasons.

This text-driven analysis also accords with common sense. As we read it, the statute does not exclude a plaintiff from the Texas-resident exception just because he decides to turn on one of his fellow plaintiffs or bring in a third party. Our reading of the statute limits the scope of cross-claimants, counterclaimants, and third-party plaintiffs to defendants that assert claims. Cross-claims, counterclaims, and third-party claims present the only three kinds of claims that defendants can file in the same suit in which they present their defense. The clause is directed toward clarifying that a

---

[23] *Id.* § 71.051(h)(2).

10

defendant cannot become a party that triggers the Texas-resident exception just by asserting its own affirmative claims.

There are at least two compelling reasons for excluding defendants who file claims from the Texas-resident exception. First, if a defendant from Texas files a third-party claim, he could be forced to litigate in Texas even if he wants to remove the case to a foreign jurisdiction. His Texas residency status becomes a curse that anchors the case in Texas even if the plaintiff is a non-resident. Second, in a case where a non-resident of Texas sues multiple defendants in a Texas forum, a defendant who is a legal resident of Texas could single-handedly prevent the other defendants from removing the case from a Texas forum by asserting an affirmative claim. Thus, without this limiting clause, claims brought by non-resident plaintiffs on matters otherwise unrelated to Texas could become cemented in Texas fora. The rule prevents this and clarifies that the Texas-resident exception is designed for non-defendants seeking relief. By contrast, transfiguring plaintiffs into non-plaintiffs just because they file a counterclaim, cross-claim, or third-party claim seems counter-intuitive and contrary to the manner in which we use the word "plaintiff" in ordinary parlance.

JUSTICE JOHNSON's dissent argues that the statute does not limit "third-party plaintiff" to defendants. We believe the extensive context discussed above indicates otherwise. JUSTICE JOHNSON's reading would contort the ordinary meaning of the word "plaintiff" by reading the statutory definition of plaintiff as excluding parties to the original petition who file cross-claims, counterclaims, or third-party claims. The statute does not close the door on original plaintiffs just because they file a cross-claim, counterclaim, or third-party claim.

11

JUSTICE JOHNSON also faults our reliance on context in interpreting the statute. But context is essential to textual analysis, something this Court has held repeatedly, emphatically, and unanimously. "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning."[24] Indeed, "[l]anguage cannot be interpreted apart from context."[25] Thus, we have tried exhaustively to interpret the statute in light of the surrounding context.

Ironically, JUSTICE JOHNSON's dissent, while faulting our textual analysis, offers no textual analysis of its own for the conclusion that "third-party plaintiff" here refers to both defendants and plaintiffs. But that conclusion, even from an isolated examination of the term by itself, is not obvious. Black's Law Dictionary defines a third-party plaintiff as "[a] *defendant* who files a pleading in an effort to bring a third party into the lawsuit."[26] While it is clear that a plaintiff can file a third-party claim under Rule 38 of our Rules of Civil Procedure, the rule never refers to plaintiffs who file such claims as "third-party plaintiffs," while the rule explicitly calls defendants who file third-party claims by that term. Thus, an isolated examination of "third-party plaintiff" does not yield an obvious answer, yet JUSTICE JOHNSON's dissent seems to assume that mere criticism of our contextual approach suffices to establish that the conclusion contrary to ours is correct.

JUSTICE JOHNSON also argues that we have wrongly relied on our own judgment as a guide to statutory interpretation and have thus risked "crossing the dividing line between judicial and

---

[24] *TGS-NOPEC*, 340 S.W.3d at 439.

[25] *Id.* at 441.

[26] BLACK'S LAW DICTIONARY 1708 (10th ed. 2014) (emphasis added).

12

legislative prerogatives." But we only weigh the equities of various outcomes in our discussion regarding the intervenors' status in the litigation, not in our discussion regarding statutory interpretation. Intervenor status is not governed by statute, and our caselaw explicitly considers equitable factors when determining intervenor status, as discussed below. Of course, when interpreting a statute, we look to the language passed by the Legislature and signed by the Governor—not to our own lights.

*ii. The intervenors are not third-party plaintiffs under the statute because they cannot be properly characterized as defendants.*

Based on our reading of the statutory definition, third-party plaintiffs in this context only refer to defendants. However, defendants are not just parties sued by a plaintiff. Intervenors can also be characterized as defendants, depending on the nature of their interests and claims. Thus, intervenors here can be excluded as "third-party plaintiffs" if they are properly characterized as defendants. While intervenors need not necessarily be defending a claim to intervene in a defendant's capacity, we conclude that these intervenors are not defendants. Therefore, they cannot be third-party plaintiffs under the statutory definition, because the definition only excludes defendants who file third-party claims.

Intervenors can be characterized as plaintiffs or defendants[27] depending on the claims asserted and relief requested by the intervenor.[28] For example, in *Noble v. Meyers*, we treated the

---

[27] *Compare Perkins,* 518 S.W.2d at 534 (characterizing intervenor as defendant) *with Noble v. Meyers*, 13 S.W. 229, 230 (Tex. 1890) (characterizing intervenor as plaintiff). *See also Jenkins v. Entergy Corp.*, 187 S.W.3d 785, 797 (Tex. App.—Corpus Christi-Edinburg 2006, pet. denied) (characterizing intervenor as defendant); *Welch v. Hrabar*, 110 S.W.3d 601, 608 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (characterizing intervenor as plaintiff).

[28] *See, e.g.*, *Perkins*, 518 S.W.2d at 534 (evaluating status based on the claims and request for relief in the intervenors' petition); *see also Sec. State Bank v. Merritt*, 237 S.W. 990, 992 (Tex.App.—Amarillo 1922, no writ). The Texas Civil Practice & Remedies Code allows for intervenors to enter suits as additional plaintiffs. *See* TEX. CIV. PRAC.

intervenor as a plaintiff. There, the plaintiffs sued a defendant to partition a piece of land.[29] The

intervenor filed a petition claiming ownership of an undivided interest in the disputed land.[30] The

plaintiffs responded to the intervention and raised various defenses but sought no relief from the

intervenor.[31] The intervenor did not show up at trial, and a take-nothing judgment was rendered

against him.[32] The intervenor appealed the judgment, arguing that his claim should have been

dismissed without prejudice. We concluded: "An intervenor against whom no affirmative relief is

asked by the pleadings of the other parties to the cause occupies so much the position of a plaintiff

that the only proper action to take with regard to him, when he fails to appear, is to dismiss his suit

for want of prosecution."[33] Since the intervenor acted like a plaintiff, we treated him like a plaintiff.

By contrast, in *Perkins v. Freeman*, we treated the intervenors as defendants even though no

affirmative claims were leveled against them. In *Perkins*, paternal grandparents intervened in a child

custody suit.[34] The father had obtained custody of the child following divorce, and the mother sued

to gain custody.[35] The trial court allowed the grandparents and the father to each have six

peremptory challenges despite a rule that only six peremptory challenges total should be given to all

& REM. CODE § 15.003.

[29] *Noble*, 13 S.W. at 229.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 230.

[34] *Perkins*, 518 S.W.2d at 534.

[35] *Id.* at 533.

defendants.[36]  The issue was whether the intervenors should be treated as defendants, thus limiting the total quantity of challenges between the grandparents and the defendant to six.[37]  The intervenors' petition alleged that the plaintiff-mother was unfit and asked that custody be granted to the intervenor-grandparents or, alternatively, the father.[38]  The intervenors made no allegation of the defendant-father's unfitness.[39]  We treated intervenors as defendants because "there was no antagonism between the intervenors and defendant" and "[t]he defendant and intervenors were united in a common cause of action against the plaintiff."[40]  Thus, we have held that intervenors can occupy the position of a defendant where their claims and prayer align them with the defendant and pit them directly against the plaintiff, even if no parties assert claims against them.

*Perkins* and *Noble* indicate that the status of the intervenor also hinges on the legal consequence of the designation.  Equitable considerations played a role in both decisions.  For example, in *Perkins*, we were concerned that allowing the intervenors and the defendant to each have a set of six peremptory challenges would give them an "unequal advantage" that "was so materially unfair that the judgment cannot be upheld."[41]  Likewise, *Noble* appears to have been animated in part by the arbitrary unfairness of shutting out the intervenor's claim simply because of voluntary

---

[36] *Id.*

[37] *Id.*

[38] *Id.* at 534.

[39] *Id.*

[40] *Id.*

[41] *Id.*

insertion into the dispute while non-parties' title claims would remain unprejudiced by the judgment.[42]  Thus, the designation of the intervenor's status is determined in part by the purposes and consequences behind the designation.

Our review of the caselaw indicates that courts rarely designate intervenors as defendants. At the stage of intervention, most intervenors inherently resemble a plaintiff: the intervenor files an affirmative claim, and, at least at the point of intervention, no parties are directly suing the intervenor.  Where the intervenor is seeking affirmative relief and is not defending a claim, we should operate under a presumption that the intervenor is a plaintiff.  Such an intervenor is only a defendant where the intervenor is closely aligned with the defendant, direct antagonism exists between intervenor and plaintiff, and equitable factors weigh in favor of treating the intervenor as a defendant.

The caselaw regarding how to classify intervenors does not persuade us that intervenors in today's case should be designated as defendants or third-party plaintiffs.  The intervenors here resemble the intervenor in *Noble*, and *Perkins* is readily distinguishable.  Moreover, equitable considerations strongly favor holding that intervenors are not third-party plaintiffs.

Like the plaintiff in *Noble*, the intervenors acted like plaintiffs, not defendants filing a third-party claim.  They inserted themselves with affirmative claims for relief.  The intervenors' interests are not in direct opposition to the plaintiff's.  In fact, intervenors here are more like plaintiffs than the intervenor in *Noble*, because the plaintiffs in *Noble* actively opposed the intervenor's claims.

---

[42] *See Noble*, 13 S.W. at 230.

Here, the plaintiff has not opposed the intervenors—in fact, he has joined with them in the action against Ford.

While the plaintiff's and intervenors' interests may be indirectly adverse, they are not in sufficiently direct opposition to justify treating intervenors as defendants. While the intervenors allege that Ford is fully liable, they have not intervened to defend or protect the estate. Rather, they seek their own affirmative and independent relief. However, the intervenors' interests may be indirectly harmed if Juan's claim against the estate is successful. The intervenors have an interest in Ford assuming the lion's share of liability, because they will not recover for any liability allotted to Cesar's estate.[43] Since the original plaintiff is suing both the estate and Ford, he has a lesser stake in the relative apportionment of liability between the two.

Nonetheless, the parties are not at loggerheads in the manner typical of a plaintiff-defendant relationship. The plaintiff's interests here are not threatened by the intervenors. The plaintiff, Juan, will be just as vindicated regardless of which of the two defendants ends up with the hot potato of liability. If anything, Juan might be better off if Ford is fully liable, since Ford's pockets doubtless run deeper than the estate's. Thus, the plaintiff has no beef with intervenors. The damages he will receive are just as valuable regardless of whose pocket they come from. Again, this is akin to *Noble*. There, the intervenor was treated as a plaintiff even though the plaintiffs actively opposed

_____

[43] We decline to speculate as to whether any recovery against the estate would diminish the wrongful-death beneficiaries' future inheritance from the estate, as nothing in the record provides insight into this possibility. Plus, the question of intervenor status focuses on parties' interests internal to the litigation and does not extrapolate to considerations of what parties might prefer in general.

the intervenor's claim.[44] The intervenor, however, did not directly oppose the plaintiff's partition, nor did his claim depend on the outcome of partitioning. Similarly here, only one party has an interest adverse to the other's. The plaintiff has no real antagonism towards the intervenors' claim against Ford.

The intervenors here are in much less tension with the plaintiff than the intervenors in *Perkins*. There, the intervenors took a position directly contrary to the plaintiff's prayer for relief and thus took on features of a defendant. One could prevail only at the expense of the other. Here, the intervenors have simply taken a different route in the course for recovery than the plaintiff's original petition. While they have an indirectly adverse interest in the plaintiff's claim against the estate, the parties are not in direct opposition. Although the defendant estate has also filed claims against Ford, that does not mean that the intervenors occupy the same adversarial stance to the plaintiff. The intervenors should not suffer guilt by association.

Ford argues that we should ignore the fact that the plaintiff here has amended his petition to sue Ford and base intervenors' status on the litigation landscape at the time they intervened, when the original plaintiff had not yet added Ford as a defendant. We decline to do so. Parties' relative positions and interests change. The caselaw indicates that intervenors' status should revolve around the practical and ongoing realities of the litigation, not on a brief snapshot of the litigation landscape at the moment intervenors entered the suit. If Juan non-suited the estate, leaving only three non-defendant parties suing Ford, we would surely not designate intervenors as defendants, much less

---

[44] *See Noble*, 13 S.W. at 229–30.

third-party plaintiffs. Labels like third-party plaintiff describe how the parties in litigation relate to each other. The dynamics of these relationships can change as litigation proceeds, and so the labels change accordingly.

The interests of the defendant and the intervenors are also not as closely aligned as in *Perkins*. There, both intervenors and defendant shared the same goal of keeping custody from the mother. The intervenor grandparents sought that custody be bestowed upon them, or, alternatively, the father. In this case, unlike in *Perkins*, the estate and the beneficiaries seek distinct kinds of relief that do not overlap. The intervenors seek relief typical of wrongful-death claims, such as emotional pain and suffering, loss of consortium, society, and support, etc. The estate, on the other hand, seeks survival damages for Cesar's pre-death suffering and funeral expenses. The evidence needed to weigh the merits of these relative claims will vary, and thus they will not be treading the same path to recovery. Moreover, the intervenors' pleadings have not sought to defend or protect the estate. Intervenors thus do not share as close an alignment with the defendant as the intervenors in *Perkins*.

Equitable factors like those considered in *Perkins* and *Noble* also play a role in determining intervenor status, and they weigh against treating intervenors as defendants who have filed third-party claims. The third-party plaintiff designation would lead to arbitrary and illogical results. For example, here, the label of third-party plaintiff and right to access the Texas-resident exception hinge on whether the beneficiaries intervened before or after the original plaintiff (Juan) amended his pleadings to add Ford as a defendant. If Juan had added Ford prior to the intervenors' plea, then they would indisputably be plaintiffs, not defendants/third-party plaintiffs, because their claims would have been aligned with the original plaintiff at the point of intervention. Likewise, the third-party

19

plaintiff designation would not apply if the beneficiaries had filed an independent suit against Ford asserting the same claims. Then they would be able to lay hold on the Texas-resident exception even though Ford would likely move to consolidate the cases. Even after consolidation, they would not be third-party plaintiffs, since they would have come into the case as independent plaintiffs rather than intervenors. And if Juan had never sued the estate, or the estate had never sued Ford, the beneficiaries would be regular plaintiffs capable of taking advantage of the exception. Nothing in the statutory definition of plaintiff indicates that the independent actions of other litigants should control a party's access to the statutory right.

Moreover, under Ford's third-party plaintiff theory, if we dismissed for forum non conveniens, the estate would have to litigate in Mexico, but the intervenors/beneficiaries could still file an independent suit in Texas, since they would no longer be third-party plaintiffs. We decline to treat a fleeting and changeable procedural characteristic as a condition precedent to the Texas-resident exception.

JUSTICE JOHNSON and JUSTICE BOYD argue that the intervenors are fully aligned with the estate and antagonistic to Juan. We disagree. Juan's interests are wholly vindicated if the intervenors succeed. In the archetypal plaintiff-defendant relationship, each can only succeed at the expense of the other. Here, both intervenors and plaintiff come away victorious if Ford is held fully liable. Moreover, we believe the dissents overstate the degree of alignment between the estate and the intervenors. Their interests are only indirectly harmed if the estate is found liable, as this may reduce Ford's ultimate apportionment of liability. Where intervenors enter litigation asserting

independent claims for relief, we believe they must be more akin to the archetypal defendant than the scenario presented here before we will treat them as such.

JUSTICE BOYD also argues that the intervenors should be considered third-party plaintiffs because they filed a claim against a third-party defendant. But Ford is formally a third-party defendant only as against the estate. Juan certainly did not become a third-party plaintiff by adding a claim against Ford just because a third-party claim had already been filed against Ford by the estate. Ford is not a third–party defendant as against all parties in the litigation. Here, the intervenors face no counter-claim, so they cannot file a third-party claim. And, contrary to the dissents' assertion, they have never affirmatively sought to defeat Juan's recovery against the estate, so they do not become constructive third-party plaintiffs because of an attempt to defend the estate, assuming this is even possible.

JUSTICE BOYD asserts that Juan's later amended petition adding Ford as a defendant does not affect the calculus because this only turns the estate into a cross-claimant, which is also a category of claimant excluded from the definition of "plaintiff." But this point misapprehends the significance of Juan's amended petition for the relative alignment of interests of Juan and the intervenors. Because Juan added a claim against Ford, his interests are no longer adverse as to the intervenors, while his interests remain adverse to the estate's. Because the relationship between Juan and the intervenors diverges from the archetypal plaintiff-defendant relationship in this critical respect, we cannot conclude that the intervenors should be treated as defendants, and thus they cannot be third-party plaintiffs.

21

Finally, we note that neither dissent addresses the arbitrariness that results from their analyses, despite our caselaw's clear consideration for the results of a designation in determining an intervenor's appropriate status. While such considerations obviously do not factor into our statutory analysis, they constitute an important part of the designation of an intervenor's status.

*   *   *

The intervenors are not fully aligned with the estate. Their interests are not directly contrary to the plaintiff's interests. We thus decline to treat intervenors as defendants, which is a precondition to being a third-party plaintiff under the statutory definition. Moreover, the designation of third-party plaintiff would lead to arbitrary and illogical results. Thus, we conclude that intervenors are not third-party plaintiffs.

*2. The intervening beneficiaries are not third-party plaintiffs merely because they stand in the decedent's legal shoes or assert the same claims as his estate (an actual third-party plaintiff).*

Ford also argues that the derivative-beneficiary rule requires us to treat the wrongful-death beneficiaries as third-party plaintiffs. We disagree.

Wrongful-death beneficiaries are derivative parties. We have said:

[T]he right of statutory beneficiaries to maintain a wrongful death action is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death, and is subject to the same defenses to which the decedent's action would have been subject. In short, wrongful death action plaintiffs stand in the legal shoes of the decedent.[45]

---

[45] *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992).

22

This derivative-beneficiary rule springs from the language of the wrongful-death subchapter, which says: "This subchapter applies only if the individual injured would have been entitled to bring an action for the injury if the individual had lived. . . ."[46]

This principle applies to both substantive and procedural limitations on the decedent's imaginary claim. For instance, in *Russell v. Ingersoll-Rand Co.*, wrongful-death beneficiaries sought to sue defendants even though the decedent could not have sued them before his death because the statute of limitations had run.[47] We held that if a decedent's action would have been barred by limitations if it had been asserted just before he died, a wrongful-death action is also barred.[48]

Our interpretation of the term "third-party plaintiff" in the statutory definition of "plaintiff" does not conflict with the derivative-beneficiary rule in the wrongful-death statute because that rule's domain does not extend to these circumstances. The derivative-beneficiary rule applies to characteristics of the decedent and his situation prevailing "immediately prior to his death."[49] This ensures that beneficiaries have no greater rights or stronger claims than the decedent would have had as a consequence of the circumstances obtaining at the time of death. Derivative status therefore relates back only to the decedent's circumstances immediately preceding his demise and is unrelated to the ongoing procedural status of the estate in the course of litigation.

---

[46] TEX. CIV. PRAC. & REM. CODE § 71.003(a).

[47] *Russell*, 841 S.W.2d at 344. In Texas, statutes of limitations are considered procedural rather than substantive bars to bringing an action. *Id.* at 356 & n.11.

[48] *Id.* at 352.

[49] *Id.* at 347.

The third-party plaintiff moniker is not a feature of or limitation on the decedent's claim, had he brought one before death. Rather, it is a part of the procedural posture of the posthumous litigation. The status of third-party plaintiff is a characteristic arising out of and internal to the litigation. Indeed, while beneficiaries' claims are in a sense derivative, beneficiaries are entitled to their own independent recovery that does not benefit the estate.[50] They are entitled to their own counsel separate from the estate. They cannot simply piggyback on the estate; they must pay their own filing fees and file their own motions, pleadings, and briefs. Their damages must be established and are distinct from those of the estate. Thus, they are entitled to treatment as a party distinct from the estate in the course of litigation and are not chained to its litigation strategy. In other words, while the beneficiaries in some sense wear the decedent's shoes, they need not follow in the estate's footsteps.

As with Ford's intervenor argument, extension of the derivative-beneficiary rule to the procedural status of the estate invites arbitrary results. If the estate had decided not to sue Ford, the beneficiaries would fit into the exception, because they would not be tied to a label that excludes them. The derivative-beneficiary rule tethers the fate of the beneficiaries to the fixed history of the decedent's rights immediately prior to death, not to the capricious future of the estate's litigation choices.

\* \* \*

The wrongful-death beneficiaries are not third-party plaintiffs. As we read it, the statutory definition of "plaintiff" limits the word to its traditional scope by preventing defendants from

---

[50] *See Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998) ("An action to recover damages for wrongful death is for the exclusive benefit of the deceased's surviving spouse, children, and parents.").

24

accessing the Texas-resident exception. The intervenors' claims do not align them with the estate in such a fashion that they should be treated as defendants, so they cannot be third-party plaintiffs under the statutory definition. And the derivative-beneficiary rule does not apply here, since the estate's status as a third-party plaintiff is unrelated to the ability of the decedent to file a claim immediately prior to his death.

## C. Wrongful-death beneficiaries are distinct plaintiffs whose own residency can satisfy the Texas-resident exception.

The statutory definition of "plaintiff" "includes both" the decedent and other parties suing to recover damages for the decedent's wrongful death. We must address the issue of whether this means that the wrongful-death beneficiaries and the decedent are combined into one plaintiff for the purposes of the exception, or whether both wrongful-death beneficiaries and decedents are distinct and separate plaintiffs, each of whom can rely on his own legal residency for purposes of the exception. While beneficiaries are derivative plaintiffs, the statutory definition allows them to rely on their Texas residency. We hold that wrongful-death beneficiaries and decedents are both distinct plaintiffs under the statute.

We apply a statute's plain meaning "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."[51] In determining a statute's meaning, we "consider statutes as a whole rather than their isolated provisions."[52] Here, context within the

---

[51] *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

[52] *TGS-NOPEC*, 340 S.W.3d at 439.

statutory definition and related provisions demonstrates that wrongful-death beneficiaries are distinct plaintiffs under the statutory definition.

The last clause of the statutory definition is a clear indicator that "includes both" means that wrongful-death beneficiaries and decedents are distinct plaintiffs. That clause says that the term "plaintiff" "does not include . . . a person who is assigned a cause of action for personal injury, or who accepts an appointment as a personal representative in a wrongful-death action, in bad faith for purposes of affecting in any way the application of this section."[53] In other words, parties who are appointed or assigned to an injured or deceased party's claim are not "plaintiffs" if they became such in order to game the system.

The Legislature's express exclusion of *bad*-faith assignees and personal representatives implies that *good*-faith assignees and personal representatives are included in the definition. Yet an assignee or a personal representative is a derivative party like a beneficiary.[54] This casts severe doubt on Ford's reading of the statute. Ford says a wrongful-death beneficiary is lumped together with the decedent as a single plaintiff because the beneficiary's claim is derivative of the decedent's claim. However, the bad-faith exception clearly implies that at least some derivative parties can be distinct and separate plaintiffs. Unless there is some textual basis for distinguishing between types of derivative parties, if any derivative party is a distinct plaintiff under the definition, then they all are.

---

[53] TEX. CIV. PRAC. & REM. CODE § 71.051(h)(2).

[54] *See Russell*, 841 S.W.2d at 347 (affirming that no wrongful-death action is allowed unless "the decedent could have maintained suit for his injuries immediately prior to his death"); *John H. Carney & Assocs. v. Texas Prop. and Cas. Ins. Guar. Ass'n*, 354 S.W.3d 843, 850 (Tex.App.—Austin 2011, pet. denied) ("An assignee 'stands in the shoes' of the assignor but acquires no greater right than the assignor possessed.").

In that case, the bad-faith exception leads inexorably to the conclusion that beneficiaries are indeed distinct plaintiffs and can make use of the Texas-resident exception. We must determine, then, whether the text provides a basis for including certain derivative parties as distinct plaintiffs while excluding wrongful-death beneficiaries.

We can find no textual basis for making this distinction. A wrongful-death beneficiary, like an assignee or a personal representative, is "a party [that] seeks recovery of damages for personal injury to or the wrongful death of another person."[55] Thus, when a decedent's estate and a wrongful-death beneficiary seek recovery, the term "plaintiff" "includes both" the estate and the beneficiary. Because of the bad-faith exception, we interpret "includes both" as creating distinct plaintiffs rather than one singular plaintiff. Therefore, wrongful-death beneficiaries, like assignees or personal representatives, are distinct plaintiffs under the statute.

Our distinct-plaintiff theory also fits with the broader context of the statute. The language of the Texas-resident exception reads in part: "The court may not stay or dismiss a plaintiff's claim under Subsection (b) *if the plaintiff is a legal resident of this state.*"[56] Multiple people cannot be "*a legal resident of the state.*" Indeed, the subsection defining "legal resident" states that a legal resident is "an individual."[57] The language envisions that a single plaintiff must be capable of being a single legal resident. A single legal resident is a single individual. A single plaintiff, therefore, cannot include multiple individuals.

---

[55] TEX. CIV. PRAC. & REM. CODE § 71.051(h)(2).

[56] *Id.* § 71.051(e) (emphasis added).

[57] *Id.* § 71.051(h)(1).

If we decided that multiple individuals could be a plaintiff, we would create a gap in the statute that would then require judicial lawmaking to resolve. If a "plaintiff" may include multiple parties, then the Court must decide whose residency should control. It is axiomatic that "[t]o supply omissions transcends the judicial function."[58] If courts should not supply gap-filling laws, then they certainly should not create a demand for them by interpreting statutes so as to create holes that otherwise would not exist. When we interpret wrongful-death beneficiaries and decedents as distinct plaintiffs, we can simply apply the Legislature's resolution for actions involving multiple plaintiffs properly joined in an action arising from the same occurrence: "If an action involves both plaintiffs who are legal residents of this state and plaintiffs who are not, the court may not stay or dismiss the action under Subsection (b) . . . ."[59] If we decide that multiple individuals can be a single plaintiff, then we must engage in a measure of judicial lawmaking to resolve the case.

Ford's arguments for the singular-plaintiff theory cannot carry the day. Ford points out that we have interpreted very similar language in the manner proposed by Ford in *Drilex Systems, Inc. v. Flores*.[60] There, we interpreted a provision defining "claimant" in the statute governing proportionate responsibility.[61] The definition at that time read: "In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, 'claimant' includes both that other person and

---

[58] *Iselin v. United States*, 270 U.S. 245, 250 (1926).

[59] TEX. CIV. PRAC. & REM. CODE § 71.051(e).

[60] 1 S.W.3d 112 (Tex. 1999).

[61] *Id.* at 122.

28

the party seeking recovery of damages . . . ."[62]  We concluded that the plain language of the statute combined the derivative and the injured parties into one single claimant.[63]

Ford's reliance on *Drilex* is misplaced, as the Texas-resident exception is readily distinguishable.  First, the proportionate responsibility provision in *Drilex* did not have a bad-faith exception that clearly implies that derivative parties are distinct plaintiffs.  Second, unlike the definition in *Drilex*, other crucial context here indicates that a single plaintiff is a party capable of being a single legal resident.

We are not concerned that disparate interpretations of almost identical language undermines principles of statutory construction.  These statutes relate to different matters, so the text of the definition itself and other context in the exception carry much more interpretive weight than a statutory provision in a far-flung part of the *corpus juris*.

Moreover, Ford's reading of the statute can only be reached by contorting the ordinary meaning of "plaintiff" without any indication that the Legislature intended to depart from the term's common usage.  As discussed above, "the word being defined is the most significant element of the definition's context."[64]  When someone says that a baseball team "includes both" a first baseman and a shortstop, it plainly means that each of them is a part of the same team.  Unlike a word like "team," however, "plaintiff," in common usage, does not apply to a collection of individuals, which renders

---

[62] Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. Gen. Laws 40, 41 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE § 33.011(1)).

[63] *See Drilex*, 1 S.W.3d at 122.

[64] SCALIA & GARNER at 232.

the meaning of "includes both" far less obvious. "Plaintiff" in ordinary use is a term applied party-by-party. Neither common parlance nor formal dictionaries use the term as referring to a collective group. Black's Law Dictionary defines "plaintiff" as "[t]he party who brings a civil suit in a court of law."[65] Likewise, Webster's Third New International Dictionary defines plaintiff as "one who commences a personal action or lawsuit" or "the complaining party in any litigation."[66] Because the ordinary sense of the word should guide our understanding of ambiguous words or phrases in the Legislature's definition,[67] the ordinary meaning of "plaintiff" points to an interpretation that reads "includes both" as creating distinct plaintiffs rather than a collective plaintiff. At the very least, the nature of the word being defined clouds the meaning of "includes both" and makes it ambiguous. The bad-faith exception provides crucial context that resolves the ambiguity by treating derivative parties, like beneficiaries, as distinct plaintiffs.

Again, Ford argues that its reading of the statute accords with the traditional rule that a beneficiary is a derivative plaintiff who stands in the shoes of the decedent and that the beneficiary's claims are wholly derivative of the decedent's rights. Thus, given this principle, says Ford, we should favor a reading of the statute that does not give a beneficiary a right that the decedent would not have had if he had brought an action immediately prior to his death.

---

[65] BLACK'S LAW DICTIONARY 1336 (10th ed. 2014).

[66] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1729 (3rd ed. 1961).

[67] SCALIA & GARNER at 232 ("The normal sense of [the word being defined] and its associations bear significantly on the meaning of ambiguous words or phrases in the definition.").

We acknowledge that the definition of "plaintiff" does not sit in isolation but must live in company with its neighbors in the broader body of law. "If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both."[68] No fair reading, however, can harmonize the wrongful-death statute's broader derivative-beneficiary rule with the Texas-resident exception. If we held that beneficiaries are not "plaintiffs" in deference to the derivative-beneficiary rule, we would render the bad-faith exception meaningless. If a good-faith assignee or personal representative can be a plaintiff, then a wrongful-death beneficiary must also be a distinct plaintiff. To hold otherwise would delete the bad-faith exception and violate our duty to "giv[e] effect to all words so that none of the statute's language is treated as surplusage."[69]

When the Legislature enacts two conflicting provisions that cannot be reconciled, "the special or local provision prevails as an exception to the general provision."[70] The narrow Texas-resident exception operates as a small carve-out to the broad rule that a wrongful-death beneficiary stands in the shoes of the decedent.

Ford also expresses the concern that the beneficiaries' reading of the statute renders the second sentence redundant. The first sentence of the definition reads: "'Plaintiff' means a party seeking recovery of damages for personal injury or wrongful death."[71] This broad language would

---

[68] TEX. GOV'T CODE § 311.026(a).

[69] *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010).

[70] TEX. GOV'T CODE § 311.026(b).

[71] TEX. CIV. PRAC. & REM. CODE § 71.051(h)(2).

31

include a wrongful-death beneficiary.  The second sentence says: "In a cause of action in which a party seeks recovery of damages for personal injury to or the wrongful death of another person, 'plaintiff' includes both that other person and the party seeking such recovery."[72]  Ford says the second sentence becomes meaningless if it only means that a wrongful-death beneficiary is a plaintiff.  The theory that decedent and beneficiaries are one plaintiff gives meaning to the second sentence by reading it as a limitation or exception to the first broader sentence.

We believe the two sentences are not redundant.  The second sentence still has meaning as an added layer of clarity.  Since the exception was written with the broad derivative-beneficiary rule as a backdrop, the second sentence serves as the kind of clear language courts seek when trying to determine whether a specific rule can be harmonized with a more general rule.  The second sentence is not redundant when viewed as a specific clarification that the definition is stepping away from the traditional rule regarding derivative plaintiffs that might otherwise apply if the Legislature had only spoken with the level of generality in the first sentence.

*     *     *

Ford's interpretation directly contradicts the necessary implication of the bad-faith exception, conflicts with contextual provisions and asks us to engage in judicial lawmaking.  We decline Ford's reading of the statute and hold instead that beneficiaries and decedents are distinct plaintiffs for purposes of the Texas-resident exception to the forum non conveniens doctrine.

---

[72] *Id.*

32

### III. Conclusion

A fair reading of the Legislature's Texas-resident exception requires that Ford defend itself in a Texas forum against claims brought by Texas residents. We cannot rewrite the statute under the guise of interpreting it. We deny the petition for writ of mandamus.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** July 3, 2014