

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00551-CV

James Brent **MANSFIELD**,
Appellant

v.

Stormie Rae **MANSFIELD**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-17710
Honorable Stephani A. Walsh, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:    Liza A. Rodriguez, Justice

Sitting:       Rebeca C. Martinez, Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: November 20, 2019

AFFIRMED

On our own motion, we withdraw the opinion and judgment issued in this appeal on October 9, 2019, and substitute this opinion and judgment in their stead.

James Brent Mansfield ("Brent") appeals a final decree of divorce. In his first issue on appeal, Brent contends the trial court erred in including the monthly payments he receives from a pre-marital structured settlement annuity in the amount of his net resources. In his second and third issues, Brent contends the trial court erred in calculating the amount of child support and

medical support he was ordered to pay. Finally, Brent contends the trial court erred in awarding conditional appellate attorney's fees to the appellee. We affirm.

## BACKGROUND

In 2010, Brent was involved in a work-related accident. In 2014, Brent entered into a settlement agreement with his employer. As part of the settlement, Brent's employer paid a structured settlement company $1,750,000 which the structured settlement company used to purchase a Single Premium Annuity Contract. Under the terms of the annuity contract, Brent receives $6,970 per month. The payments began on July 1, 2014, and end on the later of: (1) the date of Brent's death; or (2) June 1, 2044 (360 months). The structured settlement company is the owner of the annuity contract.

Brent and Stormie were married on November 12, 2016, and they had one daughter, A.M., who was born on June 16, 2017. On September 14, 2017, Stormie filed the underlying divorce proceeding. The only issues upon which the parties did not agree and that were submitted to the trial court for a decision were whether and what amount of child support and medical support the parties would be ordered to pay.

On April 10, 2018, the trial court held a hearing on temporary orders and concluded the annuity payments received by Brent were resources under section 154.062 of the Texas Family Code.[1] In entering the final divorce decree, the trial court also included the annuity payments in Brent's resources for purposes of calculating the child support and medical support the trial court ordered Brent to pay.

---

[1] The hearing on the temporary orders was presided over and the ruling was made by the Honorable Renée A. Yanta.

### INCLUSION OF STRUCTURED SETTLEMENT ANNUITY IN NET RESOURCES

In his first issue, Brent contends the trial court erred in calculating his net resources to include the monthly annuity payments. In his second and third issues, Brent contends that if the trial court erred in including the monthly annuity payments in calculating his net resources, then the trial court erred in calculating the amount of child support and medical support Brent was ordered to pay.

Generally, we review issues regarding child support and medical support under an abuse of discretion standard. *See Ochsner v. Ochsner*, 517 S.W.3d 717, 721 (Tex. 2016); *Alvarez v. Alvarez*, No. 04-13-00787-CV, 2015 WL 1938700, at *1 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.); *Brendel v. Brendel*, No. 04-08-00883-CV, 2009 WL 3789604, at *9 (Tex. App.—San Antonio Nov. 11, 2009, no pet.) (mem. op.). However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Whether the annuity payments in this case are included in the statutory definition of "resources" under section 154.062 of the Texas Family Code presents an issue of statutory construction which is a question of law that we review de novo. *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017).

"When construing a statute, our primary objective is to give effect to the Legislature's intent." *Id.* "We seek that intent 'first and foremost' in the statutory text." *Id.* "Where text is clear, text is determinative." *Ochsner*, 517 S.W.3d at 720. "[C]ourts must construe [a] statute's words according to their plain meaning because changing the meaning of [a] statute by adding words to it . . . is a legislative function, not a judicial function." *Ferreira v. Butler*, 575 S.W.3d 331, 337 (Tex. 2019) (internal quotation marks omitted). Stated differently, "[w]e cannot rewrite [a] statute under the guise of interpreting it." *In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014). Accordingly, a court's interpretation of a statute must be one that "'expresses only the will

of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.'" *Ferreira*, 575 S.W.3d at 337 (quoting *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920)).

In resolving Brent's first three issues, we must construe the statutory definition of "resources" in section 154.062 to determine if the trial court erred in including the monthly annuity payments in Brent's resources for purposes of calculating the amount of child support and medical support the trial court ordered Brent to pay. Under section 154.062, the term "resources" is defined to include "all other income actually being received, including . . . annuities . . . ." TEX. FAM. CODE ANN. § 154.062(b)(5). However, "[r]esources do not include return of principal or capital." *Id*. § 154.062(c)(1).

In arguing the trial court erred in including the monthly annuity payment as resources, Brent primarily relies on the Waco court's decision in *In re A.A.G.*, 303 S.W.3d 739 (Tex. App.—Waco 2009, no pet.).[2] In that case, "[t]he trial court excluded monies received from an annuity created from the proceeds of a personal injury settlement by creating a distinction between an annuity and a settlement annuity for purposes of determining net resources under Texas Family Code Section 154.062." *Id*. at 740. After reviewing the dictionary definition of "annuity," the Waco court noted "there are multiple definitions of an annuity," and "there are also many types of annuities for different purposes." *Id*. at 741. The Waco court then reviewed the dictionary definition of "principal" and stated the issue presented was whether the amounts received from the

---

[2] Brent also cites *Mathis v. Mathis*, No. 12-17-00049-CV, 2018 WL 1324777 (Tex. App.—Tyler Mar. 15, 2018, no pet.) (mem. op.). In that case, however, the court held, "Allowing an award for spousal maintenance based on Randall's personal injury settlement is inconsistent with the legislative intent that spousal maintenance be an award from future income of a spouse." *Id*. at *7. Accordingly, the issue decided in *Mathis* is readily distinguishable from the issue presented in the instant case.

annuity "constitute[d] a return of principal, which is not a resource, or whether it constitute[d] income that would be included as a resource." *Id*.

The Waco court then examined the nature of an annuity, asserting:

> All annuities have three critical components. For the payment of a sum of money by one person or entity, the recipient of the payment will pay money to another person the amounts on the dates agreed to in the annuity contract. Thus, the three critical elements are (1) the receipt of money, (2) the passage of time, and (3) the payment or return of money. Inherent in this process is the inclusion of interest for the acceptance of the payout of the settlement over time.

*Id*. The Waco court then held the trial court erred in excluding the entire annuity payment, holding the trial court was required to decide "what portion of the payments being received represent[ed] a return of principal and what portion represent[ed] the interest being earned for the use or forbearance of the entire amount of the settlement proceeds." *Id*. at 741-42. Thus, the Waco court concluded the trial court should only have excluded the portion of the annuity payment representing a return of principal.[3] *Id*. at 741 & n.1 (explaining the court was not reaching "the question of whether any portion of the annuity payment actually represents a return of principal because the record [was] not clear about the financial arrangements regarding the settlement and resulting purchase of the annuity").[4]

We decline to follow the Waco court's holding[5] because, as previously noted, "[w]here text is clear, text is determinative." *Ochsner*, 517 S.W.3d at 720. And, we must give the words of a statute their plain meaning without adding to the words under the guise of statutory

---

[3] In his brief, Brent also cites this court's opinion in *Mora v. Mora*, No. 04-12-00638-CV, 2014 WL 769441 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.), to support his position. In *Mora*, however, this court only addressed whether an annuity was separate property or community property. *Id*. at *9. Here, the parties do not dispute that the annuity is Brent's separate property.

[4] Stormie asserts in her brief that even under the Waco court's analysis, some portion of the monthly annuity payments would be included as resources because $1,750,000 ÷ $6,970 = 251 payments, but the annuity contract could extend as long as 360 payments.

[5] "[O]pinions from our sister courts are not binding on this court." *In re Commitment of Mares*, 521 S.W.3d 64, 71 (Tex. App.—San Antonio 2017, pet. denied).

interpretation. *Ferreira*, 575 S.W.3d at 337; *In re Ford Motor Co.*, 442 S.W.3d at 284. Here, the legislature included all income received from annuities in the definition of the term "resources," without drawing any distinction between a settlement annuity and any other type of annuity. If the legislature had intended to draw a distinction between different types of annuities, it could have done so.[6] Therefore, we hold the trial court did not err in including the monthly annuity payments to Brent in calculating his resources, and we overrule Brent's first issue. Because Brent's second and third issues are premised on the contention that the trial court erred in including the monthly annuity payments in Brent's resources for purposes of calculating the child support and medical support the trial court ordered him to pay, we also overrule Brent's second and third issues.[7]

## APPELLATE ATTORNEY'S FEES

In his fourth issue, Brent contends the trial court erred in awarding Stormie $10,000 in conditional appellate attorney's fees.

---

[6] We also note a "return" of principal implies an initial outlay of principal by the person to whom the principal is "returned." In this case, the structured settlement company paid the money required to purchase the annuity contract and is the owner of the annuity; however, its initial outlay of money was not being "returned" to the company. Although the Texas Supreme Court has repeatedly admonished courts should not resort to additional construction aids, such as legislative history, where clear statutory text is determinative, *see Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 198 n.39 (Tex. 2010); *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867-68 (Tex. 2009), we further note prior to the recodification of the Family Code in 1995, section 14.053(b) defined net resources as including "all other income actually being received, including but not limited to . . . annuities, . . . interest income from notes but not including return of principal or capital, . . . ." *In re Z.M.R.*, No. 13-11-00592-CV, 2012 WL 8013977, at *4 n.3 (Tex. App.—Corpus Christi Nov. 29, 2012, no pet.) (mem. op.) (quoting text of section 14.035(b)); *see also Farish v. Farish*, 921 S.W.2d 538, 543 (Tex. App.—Beaumont 1996, no writ) (holding phrase "return of principal or capital" in section 14.053(b) "refers to the return of principal or capital on a note"). The legislative history from the 1995 recodification reveals that the recodification of section 14.035(b) was intended as a nonsubstantive recodification. *See* House Comm. on Juvenile Justice & Family Issues, Bill Analysis, Tex. H.B. 655, 74th Leg. R.S. (1995); Senate Comm. on Jurisprudence, Bill Analysis, Tex. C.S.H.B. 433, 74th Leg. R.S. (1995); *Jones v. Fowler*, 969 S.W.2d 429, 431-32 (Tex. 1998). Accordingly, in recodifying section 14.035(b) to add subsection headings in section 154.062, thereby listing "interest income from notes" as being included in resources while listing "return of principal or capital" as being excluded from resources, the Legislature only meant to clarify the phrase "interest income from notes but not including return of principal or capital," not to substantively change its meaning.

[7] The trial court made alternative findings of fact which it found would "warrant an above guideline award of child support in the event that the Court finds that the fathers [sic] net resources found by this court are less than $9,528.13." Although Brent challenges these alternative findings in his brief, we need not address the alternative findings because we hold the trial court did not err in including the monthly annuity payments in calculating Brent's net resources.

"[A] suit for divorce in which the parties are parents of minor children necessarily includes a suit affecting the parent-child relationship ('SAPCR')." *Diaz v. Diaz*, 350 S.W.3d 251, 256 (Tex. App.—San Antonio 2011, pet. denied). "In a cause involving both a divorce proceeding and a SAPCR, a trial court has broad discretion in awarding attorney's fees, expenses and costs under sections 6.708, 106.001, and 106.002 of the Family Code." *Id*. "A movant must affirmatively plead for attorneys' fees unless the issue is waived or tried by consent." *In re T.L.T.*, No. 05-16-01367-CV, 2018 WL 1407098, at *4 (Tex. App.—Dallas Mar. 21, 2018, no pet.) (mem. op.) (citing *In re Pecht*, 874 S.W.2d 797, 803 (Tex. App.—Texarkana 1994, no writ)).

Brent first asserts the award of appellate attorney's fees was not supported by the pleadings; however, Stormie responds the issue of appellate attorney's fees was tried by consent. At the end of the trial proceeding, after the trial court stated that one or both sides mentioned appeals, the following exchange occurred:

> THE COURT: And so is there any evidence or testimony or request with regards to appellate attorney's fees?
> I'll start with you, [Brent's attorney].
> [Brent's attorney]: We're not seeking appellate attorney's fees from anyone.
> THE COURT: Okay. [Stormie's attorney]?
> [Stormie's attorney]: We would seek attorney's fees if it's an unsuccessful appeal, yes.
> THE COURT: Okay. Do you have any evidence, testimony or requests?
> [Brent's attorney]: I have — were you asking — addressing —
> THE COURT: [Stormie's attorney].
> [Brent's attorney]: Okay.
> [Stormie's attorney]: Your Honor, my request would be $10,000 to appeal to the Court of Appeals.
> THE COURT: Cross or questioning, [Brent's attorney], on that issue of $10,000 being a reasonable fee for appeal?
> [Brent's attorney]: If it's conditioned upon us being unsuccessful and them being successful, I do a lot of those, and that figure is certainly within the strike zone.

Because Brent's attorney did not object to the absence of any pleadings when the trial court addressed the issue of an award of appellate attorney's fees, we hold the issue was tried by consent.

Furthermore, the trial court accepted the statement by Stormie's attorney as testimony that $10,000 would be a reasonable fee for an appeal. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (holding attorney's unsworn statements to the court constitute evidence if no objection is made to the trial court's failure to administer oath); *Keith v. Keith*, 221 S.W.3d 156, 169-70 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding party waived oath requirement where attorneys' responses to trial court's questioning regarding appellate attorney's fees indicated attorneys were tendering evidence "based on personal knowledge of appellate attorney's fees"). Finally, Brent's attorney conceded $10,000 was a reasonable fee. Accordingly, we overrule Brent's assertion that the award of appellate attorney's fees was not supported by the pleadings because we hold the issue was tried by consent.

Brent next contends the trial court erred in awarding the appellate attorney's fees in the absence of evidence that such fees were necessary to preserve and protect the safety and welfare of A.M. In support of his contention, Brent cites section 109.001 of the Texas Family Code and *In re Wiese*, No. 03-15-00062-CV, 2015 WL 4907030, at *1 (Tex. App.—Austin Aug. 12, 2015, orig. proceeding) (mem. op.), both of which address an award of attorney's fees in temporary orders during the pendency of an appeal. The attorney's fees in this case, however, were awarded in the final decree of divorce, not in temporary orders. As previously noted, "[i]n a cause involving both a divorce proceeding and a SAPCR, a trial court has broad discretion in awarding attorney's fees, expenses and costs under sections 6.708, 106.001, and 106.002 of the Family Code." *Diaz*, 350 S.W.3d at 256. And, "[t]he trial court's award of attorney's fees may include appellate attorney's fees" as long as the award is "conditioned on which party prevails on appeal." *In re T.L.T.*, 2018 WL 1407098, at *5 (citing *Keith*, 221 S.W.3d at 169). Therefore, because the award of appellate attorney's fees in the instant case was in the final decree of divorce and not in

temporary orders, Stormie was not required to support the award with evidence that such fees were necessary to preserve and protect the safety and welfare of A.M.

Brent's fourth issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Liza A. Rodriguez, Justice