# IN THE SUPREME COURT OF TEXAS

No. 18-0656

CREATIVE OIL & GAS, LLC AND
CREATIVE OIL & GAS OPERATING, LLC, PETITIONERS,

v.

LONA HILLS RANCH, LLC, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued September 19, 2019**

JUSTICE BLACKLOCK delivered the opinion of the Court.

The 86th Legislature recently amended the Texas Citizens Participation Act (TCPA). Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. The prior version of the statute continues, however, to control cases filed before September 1, 2019. *Id.* §§ 11–12, 2019 Tex. Gen. Laws at 687. This is one such case. It requires consideration of statutory text that has been repealed but remains operative, though for a limited time only. The question is whether the erstwhile version of the TCPA applies to certain counterclaims alleged in a dispute over an oil and gas lease. The answer to that question depends on whether each counterclaim is "based on, relates to, or is in response to" the "exercise of the right of free speech" or the "exercise of the right to petition," as the governing statutory text defines those concepts. TEX. CIV. PRAC. & REM. CODE § 27.003(a). As explained below, we conclude that the court of appeals properly dismissed one

counterclaim but that the others should have been allowed to proceed. The judgment of the court of appeals is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings.

## I. Background

Respondent Lona Hills Ranch, LLC (Ranch) entered into an oil and gas lease with Petitioner-lessee Creative Oil & Gas, LLC (Lessee). Petitioner Creative Oil & Gas Operating, LLC (Operator) was the operator of the only producing well on the lease.[1] The Ranch sued the Operator in a trespass and trespass to try title action, seeking a ruling that the lease was terminated due to cessation of production. The Lessee intervened, and the Ranch later filed an amended petition dropping its claims against the Operator and instead asserting them against the Lessee. The Lessee and the Operator brought various counterclaims that essentially amounted to two claims. The first claim was that the Ranch falsely told third-party purchasers of production from the lease that the lease was expired and that payments on the purchases should stop. The second claim was that the Ranch breached the lease by filing this suit and by bringing an administrative action in the Railroad Commission seeking a ruling that the lease had terminated.[2] The second claim asserted that these adversarial actions breached section 11 of the lease, which required Lona

---

[1] The Lessee is the sole member and owner of the Operator.

[2] The Railroad Commission ultimately dismissed the Ranch's complaint. As the court of appeals explained, "the Railroad Commission issued a final order concluding that the Operator had presented a 'good faith claim' to operate the Lease and dismissing the complaint. This conclusion was based, in part, on the Railroad Commission's finding that the Operator's operations during the time the well was not producing had been 'adequate to extend the term of the lease.'" *Lona Hills Ranch, LLC v. Creative Oil & Gas Operating, LLC*, 549 S.W.3d 839, 842 (Tex. App.—Austin 2018, pet. granted).

2

Hills to give the Lessee notice of a breach and an opportunity to cure prior to commencing litigation.

The Ranch filed a TCPA motion to dismiss the counterclaims. As to the first claim, it argued its statements to third parties about the lease were an "exercise of the right of free speech," which the TCPA defines as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). As to the second claim, the Ranch argued that the filing of this suit and the Railroad Commission action were both an "exercise of the right to petition," as the TCPA defines it. *See id.* § 27.001(4).

The motion was denied by operation of law, and the Ranch appealed. The court of appeals agreed with the Ranch that the communications to third parties were an "exercise of the right of free speech" covered by the TCPA. *Lona Hills Ranch, LLC v. Creative Oil & Gas Operating, LLC*, 549 S.W.3d 839 (Tex. App.—Austin 2018, pet. granted). The court of appeals construed the appellees' briefing as failing to take direct issue with the Ranch's contention that its communications with third parties involved a "matter of public concern." *Id.* at 845–46. The court viewed appellees' briefing as focused on the argument that their counterclaims were premised on the breach of the notice and cure provision, not on the communications to third parties. As a result, the court of appeals did not address the matter-of-public-concern questions explored below. The court rejected the appellees' contention that the counterclaims were premised solely on the alleged breach of the lease. The court concluded that the counterclaims related to communications with third parties were premised on the Ranch's "exercise of the right of free speech" under the TCPA. *Id.* at 846–47. Proceeding to whether the counterclaimants had established a *prima facie* case under the TCPA, the court of appeals held that the claims failed and should have been dismissed

3

because (1) the Operator was not a party to the lease and could not assert a breach of that contract, and (2) the Lessee failed to identify a provision of the lease that was violated. *Id.* at 847.

Regarding the Operator's counterclaim concerning the filing of this suit and the Railroad Commission action, the court of appeals concluded that this claim was in response to the exercise of the right to petition. *Id.* at 848. After determining the TCPA applied, the court held the Operator could not make out a *prima facie* breach-of-contract case because it was not a party to the lease containing the notice and cure provision. *Id.* As to the Lessee, the court of appeals held that this claim did not fall under the TCPA because it was not "factually predicated" on the Ranch's right to petition. *Id.* According to the court of appeals, the Lessee's claim was not predicated on the right to petition because the Ranch had contractually agreed to limit its right to petition under the notice and cure provision of the lease. *Id.* Consistent with these rulings, the court of appeals dismissed all the Operator's counterclaims and dismissed the Lessee's counterclaim premised on communications with third parties.

## II. Discussion

## A. The TCPA

Under the TCPA,[3] a party may file a motion to dismiss a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech [or the] right to petition." TEX. CIV. PRAC. & REM. CODE § 27.003(a). A "legal action" can consist of an entire lawsuit or a subsidiary action such as a counterclaim. *Id.* § 27.001(6).

---

[3] All references to the TCPA are to the version that applies to this dispute. As noted above, the TCPA was amended in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. Indeed, section 27.001(7) was completely rewritten. These amendments do not apply to this case. *See id.* §§ 11–12, 2019 Tex. Gen. Laws at 687 (providing that amendments apply to actions filed on or after September 1, 2019).

As the TCPA uses it, the phrase "'exercise of the right of free speech' means a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Under section 27.001(7),

> "Matter of public concern" includes an issue related to:
> (A) health or safety;
> (B) environmental, economic, or community well-being;
> (C) the government;
> (D) a public official or public figure; or
> (E) a good, product, or service in the marketplace.

*Id.* § 27.001(7).

"Exercise of the right to petition" includes "a communication in or pertaining to" "a judicial proceeding," "an official proceeding, other than a judicial proceeding, to administer the law," and "an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government." *Id.* § 27.001(4)(A)(i)–(iii).

The TCPA mandates that a trial court deciding a motion to dismiss "shall consider the pleadings and supporting and opposing affidavits" filed by the parties. *Id.* § 27.006(a). The statute requires a three-step decisional process. Under the first step, the trial court must dismiss the action "if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right of free speech [or] the right to petition." *Id.* § 27.005(b). But under the second step, the court may not dismiss the action if the non-moving party "establishes by clear and specific evidence a prima facie case for each essential element of the claim." *Id.* § 27.005(c). Under the third step, the movant can still win dismissal if he establishes "by a preponderance of the evidence each essential element of a valid defense to the

5

nonmovant's claim." *Id.* § 27.005(d).  If the court orders dismissal, it shall award to the moving party reasonable attorney's fees and other costs and expenses, as well as sanctions.  *Id.* § 27.009(a). The court may also award costs and fees to the non-moving party if it finds that the motion to dismiss was frivolous or solely intended for delay.  *Id.* § 27.009(b).  Section 27.009 was also amended in 2019.  *See supra* note 3.

An order denying a TCPA motion to dismiss is subject to interlocutory appeal.  *Id.* § 51.014(a)(12).  If, as occurred here, the trial court does not rule on a motion to dismiss within a prescribed time, the motion is deemed overruled as a matter of law and the moving party may thereafter pursue an appeal.  *Id.* § 27.008(a).

The text of the TCPA dictates the outcome of this case.  We consider issues of statutory construction *de novo*.  *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018). "In TCPA appeals, we have decided whether communications are matters of public concern under a *de novo* standard of review, suggesting that the determination is one of law."  *Id.* at 897.

### B.  The Counterclaims Regarding Communications with Third Parties

Some of the Lessee's and the Operator's counterclaims alleged they were damaged when the Ranch communicated to third parties that the lease expired.  Under the first step of the TCPA analysis, the court of appeals concluded that these counterclaims were based on, related to, or in response to the Ranch's exercise of the right of free speech.[4]  Proceeding to the second step, the court of appeals concluded that the counterclaims should be dismissed because the Lessee and the

---

[4] 549 S.W.3d at 847 ("As such, the Ranch established by a preponderance of the evidence that the Operator and the Lessee's counterclaims are 'based on, relate[] to, or [are] in response to' the Ranch's 'exercise of the right of free speech.'").

Operator failed to establish by clear and specific evidence a *prima facie* case for each essential element of the counterclaims. 549 S.W.3d at 847.

The Lessee and the Operator contend that their counterclaims were not based on, related to, or in response to "a communication made in connection with a matter of public concern." At the outset, we are satisfied that these "matter-of-public-concern" arguments are properly before us. The Lessee and the Operator have contended in the trial court, the court of appeals, and this Court that their counterclaims did not involve an exercise of the right of free speech under the TCPA. They emphasize the matter-of-public-concern arguments in this Court, whereas they did not do so in the court of appeals. The Ranch's briefing, however, does not contend that the Lessee and the Operator somehow waived or failed to preserve their right to argue in this Court that the communications at issue did not involve matters of public concern. While the court of appeals should not be faulted for declining to directly address the matter-of-public-concern question based on how the case was presented in that court, both parties in this Court briefed the question as if it is properly presented. That is at least arguably the case.[5] Rather than finding waiver *sua sponte*, we will decide the dispositive legal question the parties ask us to decide.

_____

[5] As we read their brief in the court of appeals, the Lessee and the Operator repeatedly argued that their counterclaims were not based on an exercise of the right of free speech under the TCPA but were instead based exclusively on an alleged breach of a contract with the Ranch. The initial burden was on the Ranch as appellant to establish that the trial court erred in denying the Ranch's TCPA motion to dismiss. To the extent the Lessee and the Operator as appellees had any burden to establish that their counterclaims did not involve an exercise of the right of free speech, they raised that issue, although it certainly could have been argued more expansively, as it has been in this Court. *See Adams*, 547 S.W.3d at 896 ("[Petitioner] was not required on appeal or at trial to rely on precisely the same case law or statutory subpart that we now find persuasive."); *Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("Greene contends that Farmers should be precluded from raising any arguments about premium charges, form policies, and endorsements because they were not mentioned in the trial court or the court of appeals. We disagree. We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court.").

For the reasons explained below, the Ranch's communications to third parties about an oil and gas lease, on which some of the counterclaims are based, did not involve matters of public concern under the TCPA. Well-recognized principles of statutory construction inform this conclusion. As with any statute, courts must apply the TCPA "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). This means enforcing "the plain meaning of the text unless a different meaning is supplied by statutory definition, is apparent from the context, or the plain meaning would lead to an absurd or nonsensical result." *Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015). The TCPA "assigns detailed definitions to many of the terms it employs, and we must adhere to statutory definitions." *Adams*, 547 S.W.3d at 894. This "text-based approach to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014).

"It is not the Court's task to choose between competing policies addressed by legislative drafting. We apply the mandates in the statute as written." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 614 (Tex. 2006) (orig. proceeding) (citation omitted). As written, the TCPA applies to a wide variety of claims, *Adams*, 547 S.W.3d at 894, including any claim that is "based on, relates to, or is in response to" a party's "exercise of the right of free speech." TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b). "The TCPA provides its own definition of 'exercise of the right of free speech'" that "is not fully coextensive with the constitutional free-speech right protected by the First Amendment to the U.S. Constitution and article I, section 8 of the Texas Constitution." *Adams*, 547 S.W.3d at 892. The TCPA professes a purpose to "encourage

8

and safeguard . . . constitutional rights," TEX. CIV. PRAC. & REM. CODE § 27.002, but the statute's scope is dictated by its text, not by our understanding of the constitution. *See Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) ("It does not follow from the fact that the TCPA professes to safeguard the exercise of certain First Amendment rights that it should *only* apply to constitutionally guaranteed activities.").

The TCPA defines "exercise of the right of free speech" to mean "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). The question presented is whether the Ranch's communications to third parties regarding the alleged termination of the lease were "in connection with a matter of public concern." The statute provides that "'[m]atter of public concern' includes an issue related to" "environmental, economic, or community well-being," "the government," or "a good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(B), (C), (E).

The Ranch contends that its communications regarding the lease's alleged termination are covered by the TCPA because they involve the lease and its products, both of which are "a good, product, or service in the marketplace." Of course, nearly all contracts involve "a good, product, or service." But the statute refers to a "good, product, or service *in the marketplace*." TEX. CIV. PRAC. & REM. CODE § 27.001(7)(E) (emphasis added). Section 27.001(7)(E) does not encompass every "good, product, or service," but only those "in the marketplace." *Id.* If possible, the words "in the marketplace" must not be treated as surplusage. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex. 2000). Every word in a statute is presumed to have a purpose and should be given effect if reasonable and possible. *Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.*,

9

35 S.W.3d 591, 593 (Tex. 2000). Black's Law defines "marketplace" as "[t]he business environment in which goods and services are sold *in competition with other suppliers*." *Marketplace*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). The "in the marketplace" modifier suggests that the communication about goods or services must have some relevance to a wider audience of potential buyers or sellers in the marketplace, as opposed to communications of relevance only to the parties to a particular transaction.

Given the "in the marketplace" modifier, the TCPA's reference to "a good, product, or service" does not swallow up every contract dispute arising from a communication about the contract. By referring to communications made in connection with goods, products, or services "in the marketplace," the definition confirms that the right of free speech involves communications connected to "a matter of *public* concern." Moreover, section 27.001(7) states only that a matter of public concern "includes" certain enumerated topics, such as "a good, product, or service in the marketplace." The words following "includes" are illustrative of what is meant by "matter of public concern," but they do not purport to supply a comprehensive definition of that phrase. The legislature is of course free to define "matter of public concern" to include matters of purely private concern. For that matter, the legislature could declare that its use of "dogs" includes cats. We are bound by the TCPA's instruction that "matter of public concern" must be interpreted to include issues related to a good, product, or service in the marketplace. TEX. CIV. PRAC. & REM. CODE § 27.001(7)(E). The words "good, product, or service in the marketplace," however, do not paradoxically enlarge the concept of "matters of public concern" to include matters of purely private concern. As explained above, the "in the marketplace" modifier suggests that the communication must have some relevance to a public audience of potential buyers or sellers.

10

To the extent any doubt remains about the meaning of "good, product, or service in the marketplace," our understanding of those words is further confirmed by their context. They appear not in isolation but as part of the statute's explanation of what is meant by "matter of public concern." Even when a statute provides its own definition or explanation of a term—here the phrase "matter of public concern"—in applying that definition, we should not ignore altogether the common meaning of the words being defined, unless the statutory text compels otherwise.

> Statutory definitions must be interpreted in light of the ordinary meaning of the word being defined. A legislature can define terms however it wants. However, when seeking to understand statutory definitions, "the word being defined is the most significant element of the definition's context." Courts should not consider the meaning of the term to be defined in total isolation from its common usage. We presume that a definition of a common word accords with and does not conflict with the ordinary meaning unless the language clearly indicates otherwise.

*In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014) (orig. proceeding) (footnotes omitted) (quoting ANTONIN SCALIA & BRYAN GARNER, READING LAW 232 (2012)).

Thus, when construing the TCPA's list of the kinds of things meant by "matter of public concern," we should not ignore the common meaning of the words being defined. The phrase "matter of public concern" commonly refers to matters "of political, social, or other concern to the community," as opposed to purely private matters. *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (citations omitted). In seeking to understand the meaning of "good, product, or service in the marketplace," we must not ignore altogether this ordinary meaning of "matter of public concern."

Imagine a statute applicable to "dogs." The statute says "dogs" include "wild dogs, stuffed animals, or pets." One literal, grammatically permissible reading of this text would be that "dogs" means cats (or fish or snakes) as long as they are stuffed animals or pets. But courts would be

11

reluctant to adopt that reading of the text because of the context in which it appears. The context is a definition of the word "dogs," and in that context there is little doubt the explanatory list refers to stuffed dogs and pet dogs, not to their feline counterparts. Similarly, the words "good, product, or service in the marketplace" may in isolation be amenable to two textually permissible interpretations—one that includes many purely private economic matters and one that does not. As explained above, the latter reading of the text is superior because it gives meaning to the words "in the marketplace." That reading is also preferable because it comports with the text's context within the statute's explanation of the well-worn phrase "matter of public concern."

Applying this understanding of the TCPA's use of the phrase "good, product, or service in the marketplace," the Lessee's and the Operator's counterclaims allegedly involving the exercise of free speech are not covered by the TCPA. The counterclaims are based on private business communications to third-party purchasers of a single well's production. These communications allegedly caused the third-party purchasers to refuse to pay the Lessee and the Operator their share of the proceeds from this production. The counterclaims alleged that the Ranch's "wrongful actions" prevented the Lessee "from receiving the proceeds of sales of oil and gas from the Lease and from producing and selling oil and gas from the Lease and receiving its portions of the proceeds of such sales." They alleged that the Ranch "wrongfully prevent[ed] the purchasers of oil and gas production from the Lease from paying [the Operator] for the proceeds of sales of production." In support of these claims, David Pawelek, the CEO of the Lessee and the Operator, submitted an affidavit stating the Lessee and the Operator had been denied their share of the proceeds of sales under the lease because two third-party purchasers of the production refused to disburse funds. The refusal allegedly occurred because the Ranch "has written these oil and gas

12

purchasers claiming that the lease has terminated and threatening to sue them if they pay these sales proceeds or any future sales proceeds they receive from this lease to" the Lessee or the Operator. The record is devoid of allegations or evidence that the dispute had any relevance to the broader marketplace or otherwise could reasonably be characterized as involving public concerns. On the contrary, the alleged communications were made to two private parties concerning modest production at a single well.[6] These communications, with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA.

We have previously held that private communications are sometimes covered by the TCPA. *E.g.*, *ExxonMobil Pipeline Co.*, 512 S.W.3d 895; *Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015) (per curiam). These prior cases involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 898, 901 (concluding that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern due to "serious safety and environmental risks"); *Lippincott*, 462 S.W.3d at 509–10 (concluding that alleged improper provision of medical services by a health care professional are matters of public concern). Moreover, the statutory definition expressly includes issues related to "health or

---

[6] The Pawelek affidavit stated:

The purchasers of the oil and gas production from this lease have refused to pay [the Lessee and the Operator] any of their part or the part of any of the other owners of interests in this lease of these sales proceeds that they presently hold and that exceed $10,000 as to [the Lessee's] part alone. There are around 800 barrels of oil in the tanks on the lease that the actions in breach of the lease by [the Ranch and its owner] have prevented [the Lessee and the Operator] from selling and receiving the proceeds of such sales. The oil and gas purchasers Texican and DCP have refused to [] disburse these funds to [the Lessee and the Operator] because [the Ranch] has written these oil and gas purchasers claiming that the lease has terminated and threatening to sue them if they pay these sales proceeds or any future sales proceeds they receive from this lease to [the Lessee or the Operator].

13

safety," and "environmental, economic, or community well-being," TEX. CIV. PRAC. & REM. CODE § 27.001(7)(A)–(B), concerns that are not implicated on this record.[7]

The Ranch argues the counterclaims implicate economic well-being under section 27.001(7)(B) because the claims affect the economic interest of the parties and others with an interest in the well. But as noted, not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern. A private contract dispute affecting only the fortunes of the private parties involved is simply not a "matter of public concern" under any tenable understanding of those words.

In sum, the counterclaims relating to the Ranch's communications with third parties were not covered by the TCPA. Accordingly, the portion of the court of appeals' judgment dismissing these counterclaims is reversed.

## C. The "Right to Petition" Counterclaims

In addition to claiming damages resulting from communications with third parties, the counterclaims alleged that the Ranch breached section 11 of the lease by commencing litigation in the Railroad Commission and in this case. Section 11 provided for written notice of any alleged breach and an opportunity to cure prior to litigation.

---

[7] The Ranch's managing member C.V. Sheffield, III submitted an affidavit in support of the Ranch's motion to dismiss stating there was a leak on a heater vessel at the well "resulting in a constant drip" of an unidentified liquid. This de minimis reference to some sort of drip does not rise to the level of an issue related to "health or safety" or "environmental well-being" under section 27.001(7) of the Act. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 898, 901 (concluding that defamation claim concerning an alleged failure to gauge storage tanks related to a matter of public concern given testimony that such failures "create serious safety and environmental risks" because "tanks could overfill, causing noxious and flammable fluid to spill onto the ground," and because tanks are gauged "to reduce the potential environmental, health, safety and economic risks associated with" such a negative outcome).

14

The court of appeals concluded that the Operator's counterclaim regarding the alleged breach of the lease's notice-and-cure provision fell within the TCPA because it was in response to the Ranch's exercise of the right to petition. 549 S.W.3d at 848. The court then reasoned that the claim should be dismissed because the Operator, as a non-party to the lease, cannot recover for breach of it. 549 S.W.3d at 848.

The court of appeals correctly disposed of this claim. The TCPA permits a motion to dismiss a counterclaim if it "is based on, relates to, or is in response to a party's exercise of the . . . right to petition." TEX. CIV. PRAC. & REM. CODE § 27.003(a). The Act defines "exercise of the right to petition" to include "a communication in or pertaining to: (i) a judicial proceeding; (ii) an official proceeding, other than a judicial proceeding, to administer the law; [or] (iii) an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government." *Id*. § 27.001(4)(A). The filings by the Ranch in this lawsuit and in the administrative proceeding before the Railroad Commission were an exercise of the right to petition as defined by the TCPA. The Operator's counterclaim premised on those filings is therefore based on, related to, or in response to the Ranch's exercise of the right to petition. The court of appeals correctly determined that the Operator's counterclaim alleging violation of section 11 of the lease failed because the Operator was not a party to the lease and did not present clear and convincing evidence as to why is should benefit from that lease.[8] Accordingly, the portion of the court of appeals' judgment dismissing this counterclaim is affirmed.

---

[8] The Operator concedes in its petition for review that its "counterclaim might be legally deficient because Operator does not own an interest in the lease and as such is not in privity of contract with [the Ranch]." It again concedes in its main brief that it "does not own an interest in the lease" and its "counterclaim might be legally deficient." Further, the Operator makes no attempt to establish that it was a third-party beneficiary to the lease.

The Lessee, who was a party to the lease, also asserted a counterclaim alleging violations of section 11. The court of appeals held that this counterclaim was not covered by the TCPA and that the trial court did not err in declining to dismiss it. 549 S.W.3d at 848. The Ranch did not timely file a cross-petition challenging this adverse ruling, so we do not consider it.

### III. Conclusion and Disposition

The judgment of the court of appeals is affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings.

_____

James D. Blacklock
Justice

**OPINION DELIVERED:** December 20, 2019