# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00011-CV

**CITGO Petroleum Corporation, Appellant**

**v.**

**Glenn Hegar, Comptroller of Public Accounts of The State of Texas; and
Ken Paxton, Attorney General of The State of Texas, Appellees**

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-002457, THE HONORABLE TIM SULAK, JUDGE PRESIDING

## O P I N I O N

CITGO Petroleum Corporation (Citgo) appeals from the trial court's judgment in favor of Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas (collectively, "the Comptroller") in its franchise-tax protest suit. The issue in this appeal is whether the gross proceeds or the net proceeds from sales of commodity futures contracts and options on commodity futures contracts should be included in the apportionment factor denominator used to calculate Citgo's apportioned margin for franchise tax purposes. *See* Tex. Tax Code § 171.106 (how to calculate apportionment factor). The trial court determined that only the net proceeds could be included in the calculation of Citgo's apportionment factor and, consequently, Citgo was not entitled to a refund of franchise taxes paid for report years 2008 and 2009. The trial court rendered judgment that Citgo take nothing in its franchise-tax protest suit. We will affirm.

**BACKGROUND**

Texas imposes a franchise tax on businesses based or operating in the state. *See id.* § 171.001. In its most simplified form, franchise tax liability is calculated by multiplying a business's taxable margin by the applicable franchise tax rate. *See id.* § 171.002. Taxable margin is determined by multiplying a business's total margin by an apportionment factor designed to limit the franchise tax to revenue attributable to business conducted in Texas. *See id.* § 171.101. The apportionment factor's numerator consists of receipts from business conducted in Texas and the denominator consists of receipts from all business anywhere, including Texas. *See id.* § 171.106(a). Under this formula, franchise tax liability increases as the ratio of Texas receipts to total receipts increases. The Texas Supreme Court has explained:

> If the numerator (Texas receipts) increases but the denominator (all receipts) stays the same, receipts from Texas business make up a larger share of total receipts and franchise-tax liability increases. If, on the other hand, the numerator decreases against the same denominator, receipts from Texas business make up a lesser share of total receipts, and franchise-tax liability decreases.

*Hallmark Mktg. Co. v. Hegar*, 488 S.W.3d 795, 796-97 (Tex. 2016). Similarly, if the numerator (Texas receipts) stays the same but the denominator (all receipts) increases, receipts from Texas business make up a lesser share of total receipts, and franchise-tax liability decreases.

The apportionment factor denominator—the taxable entity's gross receipts from all business anywhere—is generally composed of the sum of the taxpayer's receipts from: "(1) each sale of the taxable entity's tangible personal property; (2) each service, rental, or royalty; and (3) other business." Tex. Tax Code § 171.105. However, receipts that are excluded by statute from the taxable entity's total revenue may not be included in a taxpayer's gross receipts for calculation of its apportionment factor. *Id.* § 171.1055(a). Relevant here, Texas

2

Tax Code section 171.1011(g-2) provides that "[a] taxable entity shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), the tax basis as determined under the Internal Revenue Code of securities and loans sold." *Id.* § 171.1011(g-2).[1] Thus, because it is excluded by statute from a taxable entity's total revenue, the tax basis of securities sold may not be included in the taxpayer's gross receipts for calculation of either the numerator or the denominator of the apportionment factor. *See id.* §§ 171.1011(g-2), .1055(a). The result is that only the net proceeds from the sale of loans or securities such as the commodity futures contracts and options on commodity futures contracts at issue in this case are properly included in the apportionment calculation.

Citgo refines crude oil and sells gasoline, diesel, jet fuel, lubricants, petrochemicals, and other petroleum based industrial products. Citgo owns and operates three crude oil refineries located in Lake Charles, Louisiana; Lemont, Illinois; and Corpus Christi, Texas. Because it had employees and a business location in Texas, Citgo reported and filed Texas franchise tax returns with the Comptroller for franchise tax report years 2008 and 2009. For these report years, Citgo filed combined group Texas Franchise Tax Reports for an affiliated group engaged in a unitary business that included its wholly owned subsidiary, CITGO Trading Company, L.P. (Citgo Trading). Citgo Trading bought and sold commodity futures contracts and options on commodity futures contracts for the purpose of managing the risks associated with potential fluctuation in the value of Citgo's inventory and the crude oil that it refined to produce the inventory ultimately sold to Citgo's customers. The commodity futures contracts and options on commodity futures contracts sold by Citgo Trading during the 2008 and 2009 report years met the definition of "security" in Texas Tax Code section 171.0001(13-a). *See id.* § 171.0001(13-a).

---

[1] The "tax basis" is typically the original purchase price of a security.

Because the commodity futures contracts and options on commodity futures contracts sold during the 2008 and 2009 report years were not purchased or sold to Citgo's customers in the ordinary course of its business, Citgo did not hold these securities as inventory, and they will be referred to as "the non-inventory securities." Citgo Trading bought and sold the non-inventory securities on the New York Mercantile Exchange and the Intercontinental Exchange. The purchases and sales of all the non-inventory securities took place outside Texas.

Citgo Trading made an election under Internal Revenue Code section 475(e) and section 475(f), which permitted it to have mark-to-market accounting rules apply to the non-inventory securities it held as a trader.[2]  *See* 26 U.S.C. §§ 475(e) (permitting dealer in commodities to make mark-to-market election), (f) (permitting traders in securities or commodities to make mark-to-market election). The election ensured that the Internal Revenue Service would account for any gains or losses resulting from the sale of the non-inventory securities as ordinary income or loss rather than as capital gain or loss. *See id.* § 475(a)(2) (method for recognizing and reporting gain or loss from non-inventory securities held by dealers in commodities and traders in securities or commodities who have made section 475(e) or section 475(f) election).[3]  The sales of Citgo Trading's non-inventory securities were reported on Citgo's 2007 and 2008 consolidated federal income tax returns as non-inventory securities under Internal Revenue Code section 475(a)(2). On its 2008 Texas franchise tax report, Citgo included gross proceeds of approximately $10 billion from Citgo Trading's sales of non-inventory

---

[2]  Mark-to-market accounting refers to accounting for the "fair value" of an asset or liability based on the current market price at the time of the accounting.

[3]  Section 475(a)(2) also provides the method for recognizing and reporting gain or loss from non-inventory securities held by dealers in securities. 26 U.S.C. § 475(a)(2). Accounting for inventory securities held by dealers in securities is governed by section 475(a)(1), which provides that they shall be included in the dealer's inventory at fair market value. *Id.* § 425(a)(1).

securities in calculating its apportionment factor for Texas franchise tax purposes. On its 2009 Texas franchise tax report, Citgo included approximately $12 billion from Citgo Trading's sales of non-inventory securities in calculating its apportionment factor. In both cases, the amounts were included entirely in the apportionment factor denominator because all of the sales generating the proceeds took place outside Texas. The apportionment factor numerator included $0 from Citgo Trading's sales of non-inventory securities because none of the sales generating the proceeds took place in Texas.

After auditing Citgo's 2008 and 2009 franchise tax reports, the Comptroller concluded that Citgo miscalculated its apportionment factor by including gross proceeds of approximately $10 billion from Citgo Trading's sales of non-inventory securities in its apportionment factor denominator for 2008 and gross proceeds of approximately $12 billion from Citgo Trading's sales of non-inventory securities in its apportionment factor denominator for 2009. The Comptroller determined that rather than including the gross proceeds from those sales in the apportionment factor denominator, Citgo should have included only the net proceeds. As a result, the Comptroller determined that Citgo's apportionment factor should be greater for each report year, which increased the amount of franchise tax owed for each report year.

Citgo timely filed a protest letter and accompanying protest payment of approximately $2 million and filed this tax-protest suit in Travis County District Court. *See* Tex. Tax Code §§ 112.051, .151. Citgo's suit against the Comptroller sought a refund of the approximately $2 million in Texas franchise taxes paid under protest for report years 2008 and 2009. Citgo contended that the Comptroller overstated how much of its total revenue was properly apportioned to Texas because the Comptroller included only the net proceeds from Citgo Trading's sale of non-inventory securities in Citgo's apportionment factor denominator.

5

The trial court determined that the Comptroller properly included only net, as opposed to gross, proceeds in the apportionment calculation and rendered a take-nothing judgment in the Comptroller's favor. Citgo then perfected this appeal.

**DISCUSSION**

Although usually only the net proceeds from the sale of loans or securities such as the non-inventory securities are properly included in the apportionment calculation, Citgo included the gross proceeds of those sales when it calculated its apportionment factor for report years 2008 and 2009. In doing so, Citgo relied on Texas Tax Code section 171.106(f), which provides that "[n]otwithstanding section 171.1055, if a loan or security is treated as inventory of the seller for federal income tax purposes, the gross proceeds of the sale of that loan or security are considered gross receipts." *Id.* § 171.106(f). Although it concedes that the non-inventory securities do not constitute "inventory of the seller" for federal income tax purposes, it nevertheless argues that they fall within the scope of section 171.106(f) because Citgo made an election under Internal Revenue Code section 475(e) and section 475(f) that permits it to apply mark-to-market accounting to the non-inventory securities. *See* 26 U.S.C. §§ 475(e) (permitting dealers in commodities to elect mark-to-market accounting), (f) (permitting traders in securities or commodities to elect mark-to-market accounting); *cf. id.* §§ 475(a)(1) (requiring dealer in securities to include in inventory at its full market value any security that is inventory in hand of that dealer), (2) (requiring dealer in securities to apply mark-to-market accounting to securities that are not inventory in hands of that dealer). Citgo argues that because it elected to apply mark-to-market accounting to its non-inventory securities, and because the Internal Revenue Code provides that a dealer's inventory securities are also subject to mark-to-market accounting,

6

its non-inventory securities are "treated as" inventory for federal income tax purposes. Citgo points out that because it elected to have mark-to-market rules apply to its non-inventory securities, the income and loss associated with the sale of the non-inventory securities were reported as ordinary income, as opposed to capital gains, on Citgo's federal income tax returns. The mark-to-market rules also ensured that Citgo's non-inventory securities on hand at the end of the year would be accounted for as if sold at year end for federal income tax purposes. Citgo refers to the foregoing as the "tax treatment" of its non-inventory securities. Next, Citgo states that this "tax treatment" also applies to inventory securities; that is, income and loss from the sale of inventory securities are reported as ordinary income and inventory securities on hand at the end of the year are accounted for as if sold at year end. Finally, Citgo posits that because both non-inventory securities and inventory securities have this same "tax treatment," its non-inventory securities are "treated as" inventory for federal tax purposes such that they fall within the scope of Texas Tax Code section 171.106(f).

The Comptroller counters that the securities at issue were not "treated as inventory of the seller for federal income tax purposes" as required by Tax Code section 171.106(f) but, rather, were treated as non-inventory securities which Citgo elected to, and the Internal Revenue permitted it to, account for on a mark-to-market basis. The Comptroller asserts that whether Citgo's non-inventory securities are "treated as" inventory for purposes of section 171.106(f) does not turn on whether those securities may, by Citgo's election, be accounted for using a mark-to-market accounting practice, but rather on whether they are considered to be inventory of the seller under the Internal Revenue Code, which Citgo concedes they are not. The issue, then, is one of statutory interpretation; that is, how to interpret the phrase "treated as inventory of the seller" in the context of calculating the apportionment factor for Texas

7

franchise tax purposes. This presents a question of law, which we review de novo. *See, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (statutory construction is question of law that is reviewed de novo).

Because statutory construction is at the heart of the underlying dispute, we begin our analysis by reviewing the pertinent statutory-construction principles. Our objective in construing a statute is to ascertain legislative intent. *First Am. Title Ins. v. Combs*, 258 S.W.3d 627, 635 (Tex. 2008). We discern legislative intent from the statute's language because it is "'the truest manifestation' of what lawmakers intended . . . ." *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). If statutory language is unambiguous, we will interpret and apply the statute according to its plain meaning unless a different meaning is apparent from the context or the plain meaning leads to absurd results. *In re Ford Motor Co.*, 442 S.W.3d 265, 280 (Tex. 2014) (orig. proceeding). In determining a statute's meaning, we consider the statute as a whole rather than construing specific provisions in isolation. *Id.* Undefined terms are therefore afforded their ordinary meaning unless a different or more precise definition is apparent from the context of the statute, *see* Tex. Gov't Code § 311.011(a); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011), because we cannot give an undefined term a meaning that is disharmonious or inconsistent with other provisions in the statute, *see Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). If an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the statutory scheme. *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016).

In ascertaining the legislature's intent, we may also consider other matters, including the law's objective and the consequences of a particular construction. *See* Tex. Gov't

8

Code § 311.023. Indeed, it has long been a rule of statutory construction that "a statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other defeat such manifest object, [the statute] should receive the former construction." *Citizens Bank of Bryan v. First State Bank, Hearne*, 580 S.W.2d 344, 348 (Tex. 1979); *see Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) ("[W]e must reject interpretations of the statute that defeat the purpose of the legislation so long as another reasonable interpretation exists.").

The sole basis for Citgo's inclusion of the gross proceeds from Citgo Trading's sale of its non-inventory securities is its assertion that because it made an election under the Internal Revenue Code to have mark-to-market accounting apply to its sales of non-inventory securities, their "tax treatment" is the same as that of inventory securities, and, consequently, the non-inventory securities are "treated as inventory" such that they fall within the scope of section 171.106(f). Citgo contends on appeal that the trial court's order was based on an erroneous interpretation of section 171.106(f), the relevant statutory provision. The core notion embodied in Citgo's argument is that if it reports proceeds from the sale of non-inventory securities in the same manner as a taxpayer reports proceeds from the sale of inventory—i.e., as ordinary, rather than capital, income—the non-inventory securities receive the same "tax treatment" as inventory securities and are "treated as inventory" for federal income tax purposes. Put differently, Citgo argues that tax treatment equivalent to that of securities that are inventory in the seller's hands with respect to how gain or loss from the transaction is realized (timing), the amount of the reported gain or loss (how the gain or loss is calculated), and character of the gain or loss (ordinary gain or loss as opposed to capital gain or loss) is sufficient to bring the non-inventory

9

securities within the scope of section 171.106(f) despite the fact that the non-inventory securities do not otherwise share the characteristics of "inventory."[4]

During the report years, Citgo Trading bought and sold commodity futures contracts and options on commodity futures contracts to manage the risks associated with potential fluctuation in the value of Citgo's inventory and the crude oil that it refined to produce the inventory of gasoline, diesel fuel, jet fuel, lubricants, petrochemicals, and other petroleum based industrial products it sold to its customers. Citgo Trading elected to use the "mark-to-market" accounting method for its non-inventory securities pursuant to Internal Revenue Code sections 475(e) as dealer in commodities and 475(f) as a trader in securities or commodities. Because of that election, the non-inventory securities were reported on Citgo's federal income tax returns under Internal Revenue Code section 475(a)(2). Consistent with section 475(a)(2), Citgo Trading reported the proceeds from the sales of its non-inventory securities on Form 4797 and Form 1120, line 9 as ordinary income. A separate section of the Internal Revenue Code, section 475(a)(1), requires that inventory securities held by dealers in securities be accounted for using the mark-to-market method and that dealers in securities report proceeds from the sale of their inventory securities as ordinary income. Dealers in securities, who are sellers of inventory securities, report proceeds generated by the sale of those securities on Form 1120, line 1. Despite the fact that Citgo reported its securities as non-inventory securities under section 475(a)(2) as

_____

[4] Securities held by one who is regularly engaged in the purchase of securities and their resale to customers are considered "inventory" of the seller and the seller is considered to be a "dealer in securities." A dealer in securities is "one who as a merchant buys securities and sells them to customers with a view to the gains and profits that can be derived therefrom." 26 CFR § 1.471-5(c) (Inventories by dealers in securities). "Taxpayers who buy and sell or hold securities for investment or speculation, irrespective of whether such buying or selling constitutes the carrying on of a trade or business . . . are not dealers in securities" within the meaning of section 1.471-5, and the securities they trade are not considered to be the taxpayer's "inventory." *Id.*

opposed to reporting them as inventory securities under section 475(a)(1), and despite the fact that Citgo reported the income from the sale of non-inventory securities on Form 1120, line 9, rather than on Form 1120, line 1 where income from the sale of inventory securities is reported, Citgo maintains that its non-inventory securities were "treated as" inventory securities for federal income tax purposes. Citgo maintains that the section 475(e) and (f) election and resulting mark-to-market accounting "tax treatment" of Citgo Trading's transactions equates to those transactions being "treated as inventory of the seller for federal income tax purposes" for purposes of Texas Tax Code section 171.106(f). We disagree.

Citgo's argument ignores that, under section 475(a), the proceeds from sales of both inventory and non-inventory securities are accounted for as ordinary gains and losses. Thus, taxing the proceeds of the sale of securities as ordinary income does not definitively constitute "treatment as" inventory securities. It could equally be said that it constitutes "treatment as" non-inventory securities. Citgo's argument erases the distinction between inventory and non-inventory securities, both of which can receive similar tax treatment although through application of different subsections of Internal Revenue Code section 475. Although non-inventory securities held by a trader who makes the election under section 475(e) and 475(f) have the same "tax treatment" as a dealer's inventory securities for federal income tax purposes under 475(a)(1), they *also* have the same "tax treatment" as a dealer's non-inventory securities under 475(a)(2).

For federal income tax purposes, securities that dealers in securities buy from and sell to their customers as part of their regular business are considered inventory of the seller and

11

are treated as inventory of the taxpayer under the Internal Revenue Code.[5] This tax treatment is automatic, is not optional, and is not triggered by any election by the taxpayer. Those securities are accounted for based on fair market value pursuant to section 475(a)(1), the proceeds from their sale are considered to be ordinary income, and that income is reported on Form 1120, line 1. Conversely, securities held by dealers in securities for other reasons, i.e., not for sale to customers in the ordinary course of business, are not considered inventory for federal income tax purposes. Those securities are subject to mark-to-market accounting pursuant to section 475(a)(2). Thus, the Internal Revenue Code distinguishes a securities dealer's inventory securities from its non-inventory securities based on whether or not those securities are sold to customers in the ordinary course of business.

In drafting Texas Tax Code section 171.106(f), the legislature created an exception to the general rule that proceeds from the sale of securities could not be included in the apportionment calculation on a gross basis. It conditioned the inclusion of gross proceeds from sales of securities on the requirement that the securities whose sale generated the proceeds be treated as "inventory of the seller," that is, that they have some characteristic unique to a seller's inventory securities as opposed to its non-inventory securities. That characteristic cannot be the one put forward by Citgo—that the proceeds are treated as ordinary income by virtue of the mark-to-market election—because there are also other non-inventory securities that share that characteristic in the absence of a section 475(e) or section 475(f) election. Specifically, section 475(a)(2) requires that a dealer's non-inventory securities be accounted for in the same manner as its inventory securities; a dealer must mark both its inventory and non-inventory securities to

_____

[5] A dealer in securities may also hold securities for other purposes, such as for trading or hedging, and those securities are not considered to be its inventory.

market annually, recognizing both gains and losses as ordinary. Thus, there is no difference between the "tax treatment" of a dealer's inventory securities and of its non-inventory securities under section 475 of the Internal Revenue Code. Consequently, the "tax treatment" Citgo equates to being "treated as inventory" is not a characteristic unique to an inventory security such that that characteristic determines whether a security falls within the scope of Texas Tax Code section 171.106(f).

The legislature plainly intended section 171.106(f) to permit the gross receipts from the sale of only certain types of securities to be included in the apportionment calculation. It identified those types of securities as those that are "treated as inventory *of the seller* for federal income tax purpose," as opposed to the seller's non-inventory securities. The distinction turns not on whether the net gains or losses attributable to the securities are ultimately recognized as ordinary income, the "tax treatment" Citgo relies on, which is not a characteristic unique to inventory securities, but on how the securities were handled as part of the seller's business. That is, whether the securities were sold to customers in the ordinary course of the seller's business (inventory securities) or whether they were held for other purposes (non-inventory securities). The former would be treated as inventory of the seller for federal income tax purposes and the latter would not. The fact that inventory securities are sold to customers in the ordinary course of a taxpayer's business is a characteristic unique to inventory securities and sets them apart from the seller's non-inventory securities, unlike their "tax treatment," which does not.

The plain language of the statute evidences the legislature's intent for Texas Tax Code section 171.106(f) to permit the inclusion of gross proceeds from only those securities that the Internal Revenue Code classifies as inventory of the seller. We further conclude that "treated

13

as inventory of the seller for federal income tax purposes" in section 171.106(f) refers only to securities that have the unique characteristics of inventory securities; i.e., those that are bought from and sold to customers in the ordinary course of the taxpayer's business—not any security that happens to have the "tax treatment" identified by Citgo, either automatically or by election. Because it is undisputed that the non-inventory securities at issue in this case were not Citgo Trading's inventory as defined by the Internal Revenue Code for federal income tax purposes, they do not fall within the scope of section 171.106(f), and the trial court properly concluded that the gross proceeds of the sale of those securities could not be considered gross receipts for purposes of Citgo's apportionment calculation.

## CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's judgment

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justice Triana and Kelly

Affirmed

Filed:   October 14, 2021

14